Filed 8/27/13  In re Mariah H. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re MARIAH H. et al., Persons Coming Under the Juvenile Court Law. | |
| | F066543 |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, | (Super. Ct. Nos. 516435, 516436 & 516437) |
| Plaintiff and Respondent, | |
| v. | **OPINION** |
| SUMMER P., | |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Cynthia Han, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Cornell, Acting P.J., Gomes, J. and Kane, J.

Summer P. (Mother) appeals from the juvenile court's jurisdictional and dispositional findings on a Welfare and Institutions Code section 300[1] petition, which required, inter alia, that one child remain in a foster home. Mother contends there was insufficient evidence to support the juvenile court's jurisdictional finding that the child was at a substantial risk of sexual abuse or of suffering serious physical harm. Further, Mother maintains the evidence does not support the juvenile court's order removing the child from her custody pursuant to section 361, subdivision (c)(1); the Stanislaus County Community Services Agency (Agency) failed to prove there was a continuing substantial danger to the child and failed to prove there was no reasonable means by which the child could have been protected short of removal. We affirm.

## BACKGROUND

Mariah H., 15 years old, Quinn H., 14 years old, and Ashley M., nine years old, resided with their mother and her cousin John P. On August 30, 2012, Mariah reported that John had made inappropriate comments to her of a sexual nature, had masturbated in her bedroom while she pretended to be asleep, and had touched her vagina, buttocks, and feet. Mariah also reported that about one year prior, she told her mother that she woke in the middle of the night to find John masturbating in her bedroom. In response, her mother moved Mariah and her siblings to her aunt and uncle's home. After a few days, however, they went back to the home they shared with John.

Following Mariah's report, social workers contacted Mother by telephone. Mother advised the social worker that she did not believe Mariah because Mariah was a liar. Mother did agree to sign a safety plan wherein John would leave the home during the investigation, or she and the children would leave the home. Despite being confronted with information that John admitted to having masturbated in Mariah's room, Mother continued to assert that she did not believe Mariah.

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Mother alleged that she and the children moved out of the home she shared with John pursuant to the safety plan. They went to live with her aunt and uncle. But after two weeks it became too difficult for the children to go back and forth in order to attend school. Thus, in mid-September, Mother and John swapped; she returned to the house she and John co-owned, and John moved in with his father and stepmother.

When it was reported that John was spending time at the residence he was supposed to have moved out of, and that the vehicle he was thought to be driving was seen parked at the home, the Agency asked Mother to sign a second safety plan. It was concerned about the fact Mother had not kept John away from the children despite agreeing to do so. Mother was advised that a second plan was needed because John should not be around the children under any circumstances. Mother told the social worker she would think about signing a new plan.[2] Subsequently, however, Mother advised Agency social workers that she never received a second safety plan.[3]

When social workers later visited the home on October 5, 2012, John's vehicle was noted to be parked in the driveway and Mother's vehicle was parked on the street. No one answered the door. On October 10, 2012, social workers made contact with Mother at the home. She refused entry, but acknowledged both Mariah and John were inside. Mother indicated that John did not live at the home, but visited when he was not

---

[2]At about this same time, Mother asked the school to place Mariah in an independent study program. Mariah was no longer attending school in the traditional sense. Mother denied making this change because Mariah's father, Dennis H., had tried to visit Mariah at the school after the allegations were made. Mother denied advising the principal at Mariah's school that Mariah was suffering from anxiety and thus should be assigned to independent study. Mother was concerned about Mariah drinking instead and wanted her to concentrate on her studies and avoid social disruptions. Mother denied telling Mariah that the reason she was placed in independent study was to fast track her for college.

[3]During the contested hearing, Mother testified she found the second safety plan in a pile of unopened mail she had assumed was junk mail. This occurred sometime in November, well after the children had been removed, when she was organizing her office.

working.  She stated that Mariah was not left alone with John.[4]  Mother refused to sign a new safety plan.

On October 16, 2012, all three children were taken into protective custody. Following an October 22, 2012, detention hearing, the children were ordered detained. The Agency filed its jurisdiction/disposition report on November 7, 2012.  On November 13, 2012, the court ordered that detention be continued.

After a multiday contested hearing in December, the juvenile court found the allegations of the petition to be true and determined the children were persons described by subdivisions (b) and (d) of section 300.  As to disposition, the juvenile court found a substantial danger would be posed to the children were they to be returned to the custody of Mother as she had failed to protect them.[5]  The children were adjudged dependents of the court, removed from Mother's custody, and placed under the supervision of the Agency.  Mother was afforded family reunification services.  The juvenile court set the matter for a six-month review hearing and advised Mother regarding her appellate rights. This appeal followed.

## DISCUSSION

On appeal, Mother challenges the sufficiency of the evidence relating to the juvenile court's jurisdictional and dispositional findings.

Section 300 provides, in relevant part:

> "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:  [¶] … [¶]

---

[4]Although Mother indicated both Quinn and Ashley were truthful children, Mother testified that Ashley's statement that John had to stay with Mariah during the day while Mother was away at school to ensure Mariah didn't "ma[ke] holes in the walls" was not true.

[5]The juvenile court also addressed, and made orders pertaining to, the rights of presumed fathers Dennis H. and Anthony M.  Because those orders are not challenged on appeal, this court does not address them.

4.

"(b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child …. [¶] … [¶]

"(d) The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

Pertinent here, section 361, subdivision (c) states:

"A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive, and, in an Indian child custody proceeding, paragraph (6):

"(1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury. The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm. [¶] … [¶]

"(4) The minor or a sibling of the minor has been sexually abused, or is deemed to be at substantial risk of being sexually abused, by a parent, guardian, or member of his or her household, or other person known to his or her parent, and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor from his or her parent or guardian, or the minor does not wish to return to his or her parent or guardian."

5.

In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, whether or not that evidence is contradicted, supports those findings. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.)

> "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] "'[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence … such that a reasonable trier of fact could find [that the order is appropriate].'" [Citation.]" (*In re Matthew S*. (1988) 201 Cal.App.3d 315, 321; see also *In re Angelia P*. (1981) 28 Cal.3d 908, 924.)

"Evidence from a single witness, even a party, can be sufficient to support the trial court's findings. (*In re Casey D*. (1999) 70 Cal.App.4th 38, 52–53; *In re Rocco M*. (1991) 1 Cal.App.4th 814, 820; *In re Cheryl E*. (1984) 161 Cal.App.3d 587, 598.)" (*In re Alexis E*. (2009) 171 Cal.App.4th 438, 451.)

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E*., *supra*, 171 Cal.App.4th at p. 451.)

**The Jurisdictional Finding Pursuant to Subdivision (d) of Section 300**

Mother contends there was insufficient evidence that Quinn suffered or was at substantial risk of suffering harm from sexual abuse as defined by Penal Code section 11165.1.[6]

The petition alleged, in relevant part, as follows:

> "b-1  On **August 30, 2012** … Agency received a referral that [Mariah] stated that [John], her mother's cousin who lives in the home, had stated he would not punish her for abusing her phone if she would give him what he wanted, and she knew what he wanted.  She also stated he tried to touch her early the next morning while she was still in her bed, had touched her in the past, and had masturbated in her room at night.

> "b-2  On **August 30, 2012** Emergency Response Social Worker Michelle Silveira investigated the above referral and interviewed [Mariah]. During that interview Mariah stated [John] had demanded to see her cell phone and was angry as some texts were of a sexual nature.  He then stated he would not tell her mother, or take her phone if she would give him what he wanted, and she knew what he wanted.  She also stated he tried to touch her early the next morning while she was still in her bed.  She stated about a year before she had awakened in the middle of the night and found John was in her room masturbating.  She stated she told her mother and she and her siblings went with her mother for a few days to stay with her aunt and uncle, [John's] parents.  She also stated she remembered two other occasions where she awoke and John had his hands under her clothing, one time on her private parts and one time on her butt.

> "b-3  On **August 30, 2012** Mariah stated in the CAIRE [Child Abuse Interview, Referrals and Evaluation] interview that there were several times when she had woken up and he was in her room and was masturbating in

---

[6]Penal Code section 11165.1 provides, in pertinent part:

"(b) Conduct described as 'sexual assault' includes, but is not limited to, all of the following:  [¶] … [¶]

"(4) The intentional touching of the genitals or intimate parts (including the breasts, genital area, groin, inner thighs, and buttocks) or the clothing covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification, except that, it does not include acts which may reasonably be construed to be normal caretaker responsibilities ….

"(5) The intentional masturbation of the perpetrator's genitals in the presence of a child."

7.

front of her.  She stated however, that she always pretended like she was asleep.  She stated that he has touched her over her vagina, her butt and also her feet."

Relying upon *In re Maria R.* (2010) 185 Cal.App.4th 48 and *In re Jordan R.* (2012) 205 Cal.App.4th 111, Mother argues that Quinn was not at risk of sexual abuse based upon John's actions against Mariah.  This is so because the record indicates "Quinn stated that he was never inappropriately touched and had never seen either of his sisters being inappropriately touched"; thus, Quinn was not aware of any abuse.  Further, Mother contends there was no evidence to indicate "John had a proclivity to sexually abuse male minors, or that Quinn had been exposed to any inappropriate behavior or abuse from John," or that Quinn was at risk of any offense listed in Penal Code section 11165.1  As a result, Mother asserts there was insufficient evidence to support the juvenile court's finding that Quinn was a child described by section 300, subdivision (d).

Significantly here, after Mother filed her opening brief and respondent had filed its reply brief, the California Supreme Court decided *In re I.J.* (2013) 56 Cal.4th 766, addressing whether a father's abuse of his daughter supported the juvenile court declaring his sons to be dependents.  In *I.J.*, the petition alleged the younger siblings fell within the provisions of subdivisions (b), (d) and (j) of section 300.  The high court elected to focus on subdivision (j) as it "most closely describe[d] the situation regarding the boys."  (*In re I.J.*, at pp. 773-774.)

The *I.J.* court discussed the Second Appellate District, Division Three's holdings in *In re P.A.* (2006) 144 Cal.App.4th 1339 and *In re Karen R.* (2001) 95 Cal.App.4th 84 wherein the Court of Appeal upheld the jurisdictional findings that all siblings of a sexually abused child, regardless of gender, were at substantial risk of harm:

> "Two typical cases upholding the jurisdictional finding are *In re P.A.*, *supra*, 144 Cal.App.4th 1339, and *In re Karen R.*, *supra*, 95 Cal.App.4th 84.  The *Karen R.* court said that 'a father who has committed two incidents of forcible incestuous rape of his minor daughter reasonably can be said to be so sexually aberrant that both male and female siblings of

8.

the victim are at substantial risk of sexual abuse …. Although the danger of sexual abuse of a female sibling in such a situation may be greater than the danger of sexual abuse of a male sibling, the danger of sexual abuse to the male sibling is nonetheless still substantial. Given the facts of this case, the juvenile court reasonably could conclude every minor in the home, regardless of gender, was in substantial danger of sexual abuse by father.' (*In re Karen R.*, *supra*, at pp. 90–91.)

"In *P.A.*, the juvenile court sustained an allegation that the father had sexually abused his daughter by touching her vagina under her clothes and on top of her underwear. (*In re P.A.*, *supra*, 144 Cal.App.4th at pp. 1341, 1343.) There was no evidence the father had inappropriately touched or otherwise sexually abused his sons, and it appeared the boys were unaware of the abuse. (*Id*. at p. 1345.) Nevertheless, relying in part on *In re Karen R.*, *supra*, 95 Cal.App.4th 84, the court upheld the jurisdictional finding as to the sons. It acknowledged that the abuse in its case was 'less shocking than the abuse in *Karen R.*,' but it was 'convinced that where, as here, a child has been sexually abused, any younger sibling who is approaching the age at which the child was abused, may be found to be at risk of sexual abuse. As we intimated in *Karen R.*, aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior.' (*In re P.A.*, *supra*, at p. 1347.)

"The *P.A.* court found its conclusion 'consistent with section 355.1, subdivision (d), which provides in pertinent part that: "(d) Where the court finds that either a parent, a guardian, or any other person who resides with … a minor who is currently the subject of the petition filed under Section 300 … (3) has been found in a prior dependency hearing … to have committed an act of sexual abuse, … that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence." [¶] Although section 355.1, subdivision (d), was not triggered here because there was no prior dependency proceeding at the time of the jurisdictional hearing, it nonetheless evinces a legislative determination that siblings of sexually abused children are at substantial risk of harm and are entitled to protection by the juvenile courts.' (*In re P.A.*, *supra*, 144 Cal.App.4th at p. 1347.)" (*In re I.J.*, *supra*, 56 Cal.4th at pp. 775-776.)

After recognizing contrary authority from other appellate courts, the California Supreme Court determined that the "evidence in this case was sufficient to support the juvenile court's dependency finding," thus agreeing with the Court of Appeal's majority holding.

9.

(*In re I.J.*, *supra*, 56 Cal.4th at p. 778.)  The high court went on to conclude that scientific authority is not required for a substantial risk of harm determination pursuant to section 300.  (*I.J.,* at pp. 778-779.)  Disapproving the contrary holdings of *In re Alexis S.*, *In re Maria R.* and *In re Rubisela E.* (2000) 85 Cal.App.4th 177, the *I.J.* court concluded:

> "We agree with the Court of Appeal's conclusion.  'The juvenile court is mandated to focus on "ensur[ing] the safety, protection, and physical and emotional well-being of children who are at risk" of physical, sexual or emotional abuse.  (§ 300.2.)  That is what the court did here.'  As we noted earlier, the juvenile court found, 'by clear and convincing evidence, … that there is a substantial danger to the children, if returned to the home, to the physical health, safety, protection, physical, emotional well-being of the children, and there are no reasonable means by which the children's physical health can be protected without removing the children from the father's custody in this case.'  In upholding the assertion of jurisdiction in this case, we are not holding that the juvenile court is compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused.  We merely hold the evidence in this case supports the juvenile court's assertion of jurisdiction.  (Cf. *In re Jordan R.*, *supra*, 205 Cal.App.4th 111 [upholding the juvenile court's refusal to assert jurisdiction].)"  (*In re I.J.*, *supra*, 56 Cal.4th at p. 780.)

The reasoning in *Maria R.* and similar cases has been disapproved by the California Supreme Court.  As a result, Mother's argument on this basis lacks merit.[7]

Mother's argument also fails to recognize the inaccuracy of her assertion that Quinn was not aware "that abuse was occurring."  To the contrary, the record establishes that while Quinn had never been touched inappropriately, nor had he witnessed Mariah or Ashley being touched inappropriately, he was aware of Mariah's prior report that John

---

[7]Neither are we persuaded by Mother's argument in her reply brief that the California Supreme Court's holding in *In re I.J.* is distinguishable because the Agency's petition did not allege jurisdiction under subdivision (j) of section 300.  While the high court focused on subdivision (j), nothing in its holding purports to preclude its application to cases involving subdivisions (b) and (d).  (*In re I.J.*, *supra*, 56 Cal.4th 766.)  Moreover, to the degree plaintiff has conceded a lack of jurisdiction pursuant to subdivision (d) of section 300, this court need not, and does not, accept the concession.

touched her. Quinn indicated he was "not sure if that is true." Quinn's statement of uncertainty cannot be equated with a total lack of knowledge.

> "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

John is a person who resided in the home Mariah, Quinn, and Ashley shared with their mother. The juvenile court determined that Mariah's allegations regarding John were credible. Yet Mother refused to keep her children away from John. John's behavior is plainly aberrant. He masturbated in a young girl's bedroom and touched her genitals or intimate parts. Because Quinn is a sibling of a sexually abused child, he was at risk of potential harm. The children were to be provided "maximum safety and protection." The juvenile court was not required to take a wait and see approach before assuming jurisdiction and taking the steps necessary to ensure Quinn's safety.

Under the applicable standard of review, this court resolves all conflicts in favor of the juvenile court's order and indulges all reasonable inferences from the evidence, and does not substitute its conclusions for those of the juvenile court. When the evidence of abuse in this case is reviewed within the limitations of those well-established principles, the court concludes there was sufficient evidence to support a reasonable inference that John's behavior toward Mariah was so sexually aberrant that both male and female siblings of Mariah were at substantial risk of sexual abuse. (*In re I.J.*, *supra*, 56 Cal.4th at p. 778.) Here, the juvenile court's finding of a substantial risk of sexual abuse of Quinn was supported by sufficient evidence and did not exceed the bounds of reason.

**The Jurisdictional Finding Pursuant to Subdivision (b) of Section 300**

Mother further asserts there was insufficient evidence to support the juvenile court's finding that Quinn was at substantial risk of suffering serious physical harm. Specifically, she contends there was no evidence Quinn had been abused by John, and any allegation of a risk of future harm "is pure speculation."

With regard to a failure to protect, the petition included the following allegations:

"b-4  On **August 30, 2012** Emergency Response Social Worker Michelle Silveira telephoned [Mother] to advise her of the situation and [Mother] stated she did not believe her daughter as she is a liar.  In a face to face meeting that same day [Mother] stated that [John] was the only one working and he paid all the bills.  She stated if he were gone they would lose everything.  At that meeting [Mother] agreed to a Safety Plan which stated [John] would leave the home or [Mother] would leave the home with the children until the investigation was completed.

"b-5  On **September 4, 2012** Emergency Response Social Worker Michelle Silveira met with [Mother] at the [Agency] office.  At that meeting [Mother] was adamant that she did not believe her daughter and she did not think [John] had done anything to her daughter.  Social Worker Silveira advised [Mother] that [John] had admitted to police that he had masturbated in Mariah's room.  Social Worker Silveira talked with [Mother] about being protective and [Mother] indicated she understood.

"b-6  On **September 7, 2012** Emergency Response Social Worker Michelle Silveira advised [Mother] that a new Safety Plan where [John] was not to be allowed around the children under any circumstances would be needed.  [Mother] stated she would think about it.  A plan was created and mailed to [Mother] which she was to sign and return.

"b-7  On **October 1, 2012** Emergency Response Social Worker Michelle Silveira received a telephone call from Anthony M[.], Ashley's father stating when he went to pick up his daughter [John]'s truck was at the home.  He said Ashley reported that [John] was staying at the house during the day but not spending the night, he was sleeping in his truck behind the Home Depot.

"b-8  On **October 5, 2012** Emergency Response Social Worker Michelle Silveira went to the residence … and observed that [John's] truck was parked in the driveway of the home, and [Mother]'s car was parked on

12.

the street in front of the residence. There was no answer at the door. A card was left with a note for [Mother] to call Social Worker Silveira.

"b-9  On **October 10, 2012** Emergency Response Social Worker Michelle Silveira went to [Mother's] residence and [Mother] refused entry. She stated that [John] and Mariah were both in the home. She stated [John] was not living in the home, but came there when he was not working. At that time [Mother] refused to agree to a Safety Plan to the effect that she does not leave John alone with Mariah, and that [John] would not be living in the home.  [¶] … [¶]

"b-13  Ashley and Quinn are at risk of abuse and/or neglect in the home of their mother due to [John] continuing to reside and or visit in the home and being the primary provider for the family."

Mother challenges the third element of subdivision (b) specifically. "The third element … effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future." (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.)

"Subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness.

"In determining what constitutes a substantial risk of serious physical harm, some general guidance may be drawn from subdivision (a) of section 300, which uses the same language to authorize jurisdiction where '[t]he minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm inflicted nonaccidentally upon the minor by the minor's parent or guardian.' For purposes of that subdivision, 'a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the minor or the minor's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm.' (§ 300, subd. (a).) By its terms this provision is limited to cases brought under subdivision (a). It is, however, purely advisory and illustrative. We may safely accept it as a source of illumination in interpreting subdivision (b)." (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 823.)

"Cases finding a substantial physical danger tend to fall into two factual patterns. One group involves an *identified*, *specific hazard* in the child's environment—typically an adult with a proven record of abusiveness." (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.) "[A] child comes within subdivisions (b) and (d) of section 300, if he or she has been harmed or abused *or* is at risk of being harmed or abused." (*In re Carlos T.* (2009) 174 Cal.App.4th 795, 803.)

Here, there was a specific defined risk of harm to Quinn, as well as to his siblings Mariah and Ashley. Mother did not adequately protect her children by permitting abuse to occur in her household and allowing for the potential of future abuse when she refused to ensure John did not have any contact with her children. In fact, the evidence established that Mother permitted John to return to the home she shared with the children on more than one occasion, and even permitted John to be alone with Mariah. Her lack of concern is evidenced by her refusal to believe the truth of Mariah's allegations. It is also evidenced by Mother's acceptance of John's explanation that his "anything is possible" response to the question of whether he masturbated in Mariah's bedroom was not an admission of guilt.

In *In re S.O.* (2002) 103 Cal.App.4th 453, the court declared a mother's children dependents because their father abused them and their mother could not protect them. She permitted unsupervised contact by father and was unsure whether she would reunite with father. The court found substantial and sufficient evidence existed to support jurisdiction under section 300, subdivision (b), basing its decision on the risk the mother would let the father see the youngest child without supervision. (*In re S.O.*, at p. 462.)

Here, like *In re S.O.*, the evidence demonstrates Mother's failure to acknowledge that John molested one of her children and that her children, including Quinn, faced potential danger from John. The potential for sexual abuse presents a substantial risk that the child will suffer serious physical harm.

14.

"[S]exual or other serious physical abuse of a child by an adult constitutes a fundamental betrayal of the appropriate relationship between the generations. We recently observed in another context that child molestation is among those acts 'so inherently harmful that the intent to commit the act and the intent to harm are one and the same….' [Citation.] When a parent abuses his or her own child, or permits such abuse to occur in the household, the parent also abandons and contravenes the parental role." (*In re Kieshia E*. (1993) 6 Cal.4th 68, 76-77; see also *In re I.J.*, *supra*, 56 Cal.4th at p. 778.)

Mother abandoned her parental role by failing to protect her children from an abuser in her household.

Mother's ongoing unwillingness to appreciate the risk to her children provides substantial evidence supporting the juvenile court's finding by clear and convincing evidence that these children were at substantial risk of serious physical harm if left in Mother's care.

**The Juvenile Court's Removal Finding Regarding Quinn**

Mother contends there is insufficient evidence to support the juvenile court's order removing Quinn from her custody pursuant to section 361, subdivision (c)(1).

Section 361, subdivision (c)(1) provides:

"A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances … :

"… There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of the injury. The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent

15.

or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm."

"The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) Although the juvenile court's findings must be based on clear and convincing evidence, we review an order removing a child from parental custody for substantial evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

> "The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order. (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104.) On a challenge to an order removing a dependent child from his or her parent, we 'view the record in the light most favorable to the order and decide if the evidence is reasonable, credible and of solid value.' (*Kimberly R. v. Superior Court* [(2002)] 96 Cal.App.4th [1067,] 1078.) We draw all reasonable inferences from the evidence to support the findings and orders of the dependency court. (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193.)" (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462-463.)

Here, the juvenile court found as follows:

> "[THE COURT:] As to disposition, I have to find that there is a substantial danger to the children, either emotionally or physically, if they were to be returned to the custody of a parent.

> "Based upon mother's inability and unwillingness to accept what has gone on to her children, the Court finds based upon clear and convincing evidence, that there is or would be a substantial risk of detriment to the children's safety, protection, or physical or emotional well-being if they were to be returned to the custody of the mother right at this time, and there are no reasonable means by which they can be protected, and that is because mother has failed to protect her children.

> "I understand that there is an issue that John—it seems like John's target was Mariah, but, certainly, if nothing was done, Ashley could very well be his next target. I'm also very concerned—and I realize that, apparently, Quinn was never propositioned by John, but mother has still shown an inability to be protective of her children, and because of that, at

16.

this particular point, the Court is not able to return Quinn to the custody of his mother either."

Initially, Mother contends the Agency failed to present clear and convincing evidence that Quinn faced a substantial danger to his physical health, safety, protection or physical or emotional well-being.[8]

The juvenile court heard testimony that Mother did not believe Mariah's allegations against John because she believed Mariah was a liar. It was clear that Mother was "very protective of John throughout the[] proceedings" and the court believed that "[i]f mother was half as much protective of Mariah as she was of John," dependency proceedings would have been unnecessary. The court found Mother not credible. It was convinced that Mother's actions of seeming to pit Quinn and Ashley against Mariah by refusing to believe Mariah's allegations, and by failing to keep John away from her children despite allegations of sexual abuse, placed all of the children, including Quinn, at substantial risk of harm.

Where a parent fails to acknowledge that abuse has occurred and been perpetrated upon a child, and where that failure could lead to further contact between the abuser and the children, a court could reasonably determine removal is proper. (See *In re Levi H.* (2011) 197 Cal.App.4th 1279, 1291-1292 [mother did not believe husband could have inflicted injuries upon child and continued living with husband]; see also *In re Mariah T.* (2008) 159 Cal.App.4th 428, 440-441 [mother refused to believe boyfriend sexually abused daughter, chose to continue to live with boyfriend rather than avoid having children placed outside the home].) Similarly, in this case, Mother has never believed Mariah over John, even in the face of John's admission. She defied safety plans by refusing to keep John away from the children pending investigation.

---

[8]In support of her argument, Mother relies upon *In re Alexis S.*, *supra*, 205 Cal.App.4th 48. However, as noted above, *Alexis S.* was recently disapproved by the California Supreme Court in *In re I.J.*, *supra*, 56 Cal.4th 766, and thus does not assist Mother.

We disagree with Mother that "[r]emoval was not 'essential to avert harm'" to Quinn. According the juvenile court the deference to which its findings are entitled, we find there is sufficient evidence to support its finding that Mother's children, including Quinn, faced substantial danger to their physical health, safety, protection, or physical or emotional well-being were they to be returned to Mother's custody.

Next, Mother argues the Agency failed to prove there were no reasonable means by which Quinn could have been protected short of removal. She contends the court's order prohibiting any contact between the children and John "eliminates all threats posed to the children by John and was a reasonable alternative to removal."[9]

We do not agree. There was clear and convincing evidence to the contrary. Despite numerous attempts by the Agency to garner Mother's cooperation in keeping John away from the children, Mother failed to do so. During the contested hearing, Mother argued she had in fact complied with the safety plans, parsing the language employed therein rather than acknowledging the clear intent behind the safety plans. The juvenile court did in fact order Mother to keep John away, but did so only after an extended discussion about Mother possibly visiting her children over the Christmas holiday while they were in the custody of others. This only lends credence to its finding that it believed Mother continued to pose a danger to her children for her unwillingness to protect them. The order did not "eliminate all threats." Given Mother's history of permitting John to visit her home and children in contravention of the Agency's wishes, even where Mother testified she would obey the juvenile's courts order, there is sufficient evidence in this record to support the juvenile court's removal order.

---

[9]To the degree Mother argues that because she testified under oath that she would obey the court's orders there were reasonable means to protect Quinn short of removal, Mother is asking this court to make a credibility determination or reweigh the evidence. We cannot, and will not, do so. (*In re Jacqueline G.* (1985) 165 Cal.App.3d 582, 585.)

18.

Mother cites to *In re Henry V*. (2004) 119 Cal.App.4th 522 in support of her argument. In that case, the court reversed the removal order of a child who sustained burn marks of undetermined origin and whose mother had bonding deficiencies. (*Id*. at pp. 527, 531.) The court reasoned the physical abuse was a single occurrence and the mother was fully cooperative in taking advantage of the services offered to her. In addition, removal had been premised on the need to complete a bonding study but there was no evidence the study could not occur with the child living at home. Rather, the social worker acknowledged that in-home bonding services, unannounced visits and public health nursing services could address the bonding issue and mitigate the risk of further physical abuse. (*Id*. at p. 529.) The appellate court reversed the dispositional findings after concluding the juvenile court did not understand that its removal order had to be supported by clear and convincing evidence and that there was insufficient evidence to support the order. (*Id*. at pp. 529–530.)

The present case is not similar to *In re Henry V*. The court was not faced with a single incidence of physical abuse and a fully cooperative parent. Rather, the juvenile court here had a well-founded fear that Mother would continue to discount Mariah's allegations in favor of John's unreasonable explanation for his behavior, thereby allowing contact between John and the children. It also noted Mother's "limited" progress regarding reunification services. Here, the record reflects that the juvenile court made its dispositional findings by clear and convincing evidence and, as discussed above, substantial evidence supports the juvenile court's decision to remove the children.

Notably too, the juvenile court did consider alternatives to removing Quinn, as well as Mariah and Ashley, from Mother's care. As one alternative, the juvenile court considered placement of Mariah and Quinn with their biological father, Dennis H. However, the court determined that "[n]either Mariah nor Quinn can be returned to the custody of their father because I believe it would create severe emotional detriment

19.

because they don't have a relationship with him at this particular time, and father's not asking for the return of custody."

In sum, the juvenile court's dispositional orders are supported by substantial evidence.

## DISPOSITION

The jurisdictional and dispositional orders entered on December 21, 2012, are affirmed.