115 Cal.Rptr.2d 18 (2002)
95 Cal.App.4th 84
In re KAREN R. et al., Persons Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Rosa P., Defendant and Appellant.
No. B149292.
Court of Appeal, Second District, Division Three.
December 10, 2001.
As Modified January 9, 2002.
Michael A. Salazar, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd W. Pellman, County Counsel, Doraine F. Meyer, Senior Deputy County Counsel, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
KLEIN, P.J.
Rosa P. (mother) appeals a dispositional order entered by the juvenile court with respect to minors Karen R. (1987), Alvaro R. (1992) and Jennifer R. (1994).

FACTUAL AND PROCEDURAL BACKGROUND
At the adjudication hearing in March of 2001, Karen R. testified that she previously lived with maternal grandmother in Guatemala until approximately two years ago when she moved here at the age of 11 years to be with mother and father.
On January 2, 2001, Karen R. was baby-sitting her younger siblings, Alvaro R. and Jennifer R., as she frequently does. At approximately 10:00 p.m., mother and father returned home from work. Karen R. was in the bathroom. Father began to bang loudly on the bathroom door and called Karen R. a "bitch." When Karen R. opened the door, mother and father grabbed Karen R. by the hair, threw her to the floor of their bedroom and began to kick her. Father kicked Karen R. approximately five times. Mother kicked Karen R. "about three times." Father also punched Karen R. in the face and body, struck and strangled her with a jump rope *19 and said he was going to kill her. Mother struck Karen R. and called her a "bitch." Mother got an electric shaver and plugged it in for father who began to cut Karen R.'s hair. Karen R. repeatedly asked father not to cut her hair but father told Karen R. to "shut up." After father cut Karen R.'s hair to chin length, father told mother to return to work and report they would not return that night.
Mother complied and, when she left the house, father told Karen R. that if she had sexual intercourse with him, he would not cut all her hair. Karen R. said she would never have sexual intercourse with father. Father told Alvaro R. and Jennifer R. to go to their room because he wanted to speak to Karen R. alone. Karen R. told them not to leave but father said, "Yes, leave." Father took Karen R. to his bedroom and again told her that if she had sexual intercourse with him he would not cut her hair. Karen R. again refused. Father then tore off Karen R.'s clothing, cut the remainder of her hair, threw Karen R. on the bed and raped her while he held her hands behind her back. Afterwards Karen R. called father "stupid" and he slapped her. Father told Karen R. that if she told anyone or left the house, he would find her and kill her. Karen R. ran to the bathroom, cleaned herself with a towel, went to Alvaro R. and Jennifer R.'s room wrapped in a towel and told them she had been raped.
When mother returned, father continued to strike Karen R. with his fist in Alvaro R. and Jennifer R.'s bedroom. Alvaro R. and Jennifer R. were both crying. At approximately midnight, mother and father took Karen R. to the kitchen and forced her to do push-ups and sit-ups. Father made degrading comments to Karen R. during these exercises and called her a "slut." Father stood on Karen R.'s back and repeatedly poured cold water on the nape of her neck. Mother sat "there in a chair" and did nothing. Karen R. asked why father was mistreating her but father told Karen R. to "shut up." Father made Karen R. exercise until approximately 5:00 a.m. when he went to bed and told Karen R. to sleep in the laundry room until 6:00 a.m. and then prepare moles for breakfast.
Karen R. was not allowed to attend school for about four days after this incident because she was "black and blue." After four days, the facial bruises faded and mother and father told Karen R. to wear a sweater and pants. Karen R. did not report the incident until about three days later.
Karen R. testified father once previously raped her in his bedroom in September 2000. On that occasion, father told mother to visit her friends with Alvaro R. and Jennifer R. and to leave Karen R. at home to feed father. When Karen R. prepared mole, father said he did not want it, threw Karen R. into his bedroom and told her to have sexual intercourse with him. Father grabbed Karen R., tore off her clothes and raped her while holding her hands behind her back.
When mother came home, Karen R. was crying and told mother that father had raped her. Mother did not believe Karen R. and said father was not capable of doing that. Mother called Karen R. a liar and said she "better shut up." Father also previously has struck Karen R. and her siblings and has forced them to exercise for two or three hours if any one of them did something wrong. Mother was present for these incidents. Father also touched Karen R.'s butt on "many" occasions in an inappropriate way and once tried to kiss her while mother was in the bathroom.
On cross-examination, Karen R. testified father is the only male with whom she has ever had sexual intercourse. Father once *20 previously attempted to rape Karen R. but she escaped. Father threatened to kill Karen R. if she said anything each time he raped her and when he attempted to rape her. Karen R. "detested" father for the things he had done to her.
Eight-year-old Alvaro R. and six-year old Jennifer R. testified they became frightened after they saw father hit Karen R. and went into their room to watch television. Later that night, Karen R. came into their room wrapped in a towel. Her hair had been cut, she had a swollen eye and she was crying. Jennifer R. heard Karen R. tell mother that father had raped her. Mother replied, "I don't want to hear you. Shut your mouth." Jennifer R. testified she was "a little bit" afraid of her parents before the night of Karen R.'s abuse because they had hit her and Alvaro R. with a belt on numerous occasions. Witnessing Karen R.'s abuse made Jennifer R. afraid that her parents would abuse her. Alvaro R. testified father had hit him once with a belt softly but it had not hurt.
Father denied he had ever raped Karen R. or acted in a sexually inappropriate manner but admitted that on January 2, 2001, he struck Karen R. with his hands and a jump rope, shaved her hair and made her exercise for approximately 45 minutes. Father denied choking Karen R. with the jump rope but admitted wrapping it around her neck. Father denied he had threatened to kill Karen R. and testified he loved her as a daughter.
Dr. Astrid Heger examined Karen R. and found evidence of repetitive trauma to the vagina and hymen that would be inconsistent with consensual sexual activity.
The juvenile court found, among other things, that Karen R. had been sexually abused by father on September 20, 2000, and January 2, 2001, mother failed to take action to protect Karen R. from said abuse and such conduct by father places Karen R.'s siblings, Alvaro R. and Jennifer R. "at risk of suffering similar sexual abuse." The juvenile court declared the minors dependent children under Welfare and Institutions Code section 300, subdivisions (a) through (d), (i) and (j).[1]
The juvenile court proceeded immediately to disposition and ordered mother to attend anger management classes counseling, group counseling, a 52-week parenting class, individual counseling for anger management, physical abuse and failure to protect the children, sexual abuse counseling and conjoint counseling with Karen R. when appropriate. With respect to father, the juvenile court denied family reunification services. The juvenile court indicated it had decided not to deny mother family reunification services "because it could be that through her programs [she will] decide[ ] to separate herself from the father in order to get all three of her children back in order to form a relationship with Karen [R]."

CONTENTIONS
Mother contends there was insufficient evidence to support the finding Alvaro R. was a dependent child under section 300, subdivision (d), or to warrant removal of Alvaro R. and Jennifer R. from mother's custody and the juvenile court failed to make a reasonable reunification plan.

DISCUSSION

1. The evidence supports the juvenile court's finding Alvaro R. was at substantial risk of sexual abuse.

Mother contends there was no evidence presented at the adjudication hearing to support the juvenile court's finding that *21 Alvaro R. was at substantial risk of sexual abuse. Thus, the finding that Alvaro R. was a dependent child under section 300, subdivision (d), must be reversed. (In re Rubisela E. (2000) 85 Cal.App.4th 177, 199, 101 Cal.Rptr.2d 760.) Mother claims reversal of this finding will relieve her of the requirement that she address issues of sexual abuse of a male child during family reunification.
We conclude the evidence demonstrates that Alvaro R. not only personally was the victim of sexual abuse as that term is used in section 300, subdivision (d), but also that he was at substantial risk of future sexual abuse.
Section 300, subdivision (d), provides that a child comes within the jurisdiction of the juvenile court if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household. ..."
Penal Code section 11165.1, defines sexual abuse to include "sexual assault." Subdivision (a) of Penal Code section 11165.1 defines "sexual assault" to include violations of Penal Code section 647.6 (child molestation). "Section 647.6, subdivision (a), states a misdemeanor offense for every person who `annoys or molests any child under the age of 18.' In contrast to section 288, subdivision (a), section 647.6, subdivision (a), does not require a touching [citation] but does require (1) conduct a `"normal person would unhesitatingly be irritated by"' [citations], and (2) conduct `"motivated by an unnatural or abnormal sexual interest"` in the victim [citations]." (People v. Lopez (1998) 19 Cal.4th 282, 289, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
"`Annoy' and `molest' ordinarily relate to offenses against children, with a connotation of abnormal sexual motivation. The forbidden annoyance or molestation is not concerned with the child's state of mind, but rather refers to the defendant's objectionable acts that constitute the offense. [Citation.] [¶] Accordingly, to determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an objective test not dependent on whether the child was in fact irritated or disturbed. [Citations.]" (People v. Lopez, supra, 19 Cal.4th at p. 290, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
Here, Alvaro R. witnessed the initial beating of Karen R. by mother and father, and later saw Karen R. crying, her head having been forcibly shaved, wrapped in a towel and reporting that father had raped her. When mother arrived home and Karen R. reported the sexual abuse, mother refused to believe Karen R. and humiliated her. Father and mother then continued to physically abuse Karen R. in the presence of Alvaro R., and forced her to exercise late into the night.
While no act of sexual abuse occurred in Alvaro R.'s presence, the abuse that did take place in his presence clearly was sufficient to warrant the conclusion that a normal child in Alvaro R.'s position would have been greatly disturbed and annoyed at having witnessed these events. Thus, the juvenile court properly could conclude Alvaro R. personally had been the victim of child molestation and thus had been sexually abused within the meaning of section 300, subdivision (d). (People v. Lopez, supra, 19 Cal.4th at p. 289, 79 Cal.Rptr.2d 195, 965 P.2d 713.) Thus, even under Rubisela, it is clear the evidence supports the juvenile court's finding under section 300 subdivision (d).
Moreover, In re Rubisela E., the case relied upon by mother for the proposition that sexual abuse of a female child does *22 not establish substantial danger of sexual abuse to a male sibling, conceded that sexual abuse of a female child can be harmful to a male sibling. It noted: "We do not discount the real possibility that brothers of molested sisters can be molested ... or in other ways harmed by the fact of the molestation within the family. Brothers can be harmed by the knowledge that a parent has so abused the trust of their sister. They can even be harmed by the denial of the perpetrator, the spouses acquiescence in the denial, or their parents' efforts to embrace them in a web of denial." (In re Rubisela E., supra, 85 Cal.App.4th at p. 198, 101 Cal.Rptr.2d 760.)
Additionally, we conclude a father who has committed two incidents of forcible incestuous rape of his minor daughter reasonably can be said to be so sexually aberrant that both male and female siblings of the victim are at substantial risk of sexual abuse within the meaning of section 300, subdivision (d), if left in the home. To the extent other cases suggest only female siblings are in substantial danger of sexual abuse after a sexually abused female sibling has been removed from the home due to sexual abuse by a father, we respectfully disagree. (See In re Rubisela E., supra, 85 Cal.App.4th at p. 197, 101 Cal. Rptr.2d 760; In re Joshua J. (1995) 39 Cal.App.4th 984, 994-995, 46 Cal.Rptr.2d 491.) Although the danger of sexual abuse of a female sibling in such a situation may be greater than the danger of sexual abuse of a male sibling, the danger of sexual abuse to the male sibling is nonetheless still substantial. Given the facts of this case, the juvenile court reasonably could conclude every minor in the home, regardless of gender, was in substantial danger of sexual abuse by father. Accordingly, the juvenile court's order finds substantial support in the record.
2.-3.[**]

DISPOSITION
The order is affirmed.
We concur: CROSKEY and KITCHING, JJ.
NOTES
[*] The portions of this opinion to be deleted from publication are parts 2 and 3 of the Discussion.
[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.
[**] See footnote *, ante.