Filed 5/1/13  In re F.B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re F.B. et al, Persons Coming Under the Juvenile Court Law. | |
| | D062696 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J516449B/C/D/E) |
| v. | |
| CHARLES B., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

Charles B. appeals jurisdictional and dispositional orders concerning four of his children, F.B., G.B., C.B. and E.B. (together the children).  He contends jurisdiction over

the children was not proper under Welfare and Institutions Code[1] section 300,

subdivision (d) because there was no evidence any of them had been or were at risk of

being sexually abused; and jurisdiction was not proper under section 300, subdivision (b)

because there was no evidence they were at substantial risk of serious physical harm or

illness. He also asserts the court erred by ordering the children removed from his

custody. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2012, the San Diego County Health and Human Services Agency

(Agency) petitioned on behalf of nine-year-old F.B., seven-year-old G.B., six-year-old

C.B., and five-year-old E.B. under section 300, subdivision (d), alleging the children

were at substantial risk of harm because Charles had sexually abused a six-year-old

unrelated female child. The petitions alleged that Charles, while in bed with the children,

had anal intercourse with the child, showed her his penis, asked her to orally copulate

him, touched her vagina, and had her lick his nipples while she touched him. Charles

was arrested and charged with committing lewd and lascivious acts with a child under 14.

The petitions were later amended to include allegations under section 300, subdivision

(b), that the sexual abuse of this girl placed the children at risk of serious harm because

---

[1]      Statutory references are to the Welfare and Institutions Code unless otherwise
specified.

2

Charles had shown an inability to adequately supervise them by exposing them to this conduct.[2]

F.B., G.B., C.B. and E.B. each denied Charles had inappropriately touched them, and they denied seeing him touch any other children in a sexual manner. S.E., Charles's neighbor, said that when her three daughters returned home from spending time in Charles's home, her 12-year-old daughter reported she had seen her six-year-old sister in a bedroom with Charles and the six-year-old's pants were down around her ankles. When questioned, the six-year-old said Charles had been touching her private area and pointed to her vagina. S.E. said Charles told her daughter to put his "pickle" (penis) in the daughter's mouth and had forced her to have anal intercourse with him while his own four children were in the same bed. The alleged victim also said Charles had forced her to lick his nipples and this activity had occurred several times. There also was evidence Charles had sexually abused the six-year-old's ten-year-old sister.

During forensic interviews, the six-year-old alleged victim said Charles forced her to orally copulate him, and he anally penetrated her, rubbed his hand on her vagina, and forced her hand on his penis while she sucked his nipples. He told her not to tell anyone. The ten-year-old alleged victim said Charles began touching her when she was eight or nine. She said at first he was nice, but then began telling her to "suck the pickle" and

---

[2] F.B., G.B., C.B. and E.B had earlier been dependent children of the juvenile court in 2006 because their mother, L.A., abused drugs. L.A. did not successfully participate in the court-ordered services offered to her and in 2008, the court awarded physical custody to Charles.

anally penetrated her. She said some of the other children were present when it happened, and it happened more than once, but she was afraid to tell anyone. Both girls also said they had seen Charles touch F.B. and G.B. on their buttocks.

The 12-year-old sister of the alleged victims said she had walked into Charles's bedroom and saw her little sister pulling up her pants. The other children were asleep on the bed. She said her sister, F.B. and G.B. always lay on top of Charles and got under the covers while he rubbed their buttocks.

Charles denied committing any sexual abuse. He said he allowed his children and the neighbor children to lie on his bed to watch television.

The children gave various accounts of the sleeping arrangements in Charles's home. F.B. reported Charles slept alone, and the children slept in another bedroom, but that C.B. and E.B. sometimes slept with Charles when they were afraid at night. F.B. said she sometimes lay on Charles's bed, but she did not sleep with him. She said two of her friends, M. and T., sometimes spent the night, but they never slept in Charles's bedroom although they might go into the room to ask him for something. G.B. said she and C.B. slept with Charles, but F.B. and E.B. did not. She said F.B.'s friend, T., slept in Charles's room, and Charles let her do so because he did not want to be mean. C.B. said three friends spent the night. Two slept with him and his siblings, but T. slept with Charles. C.B. said T. begged Charles to let her spend the night with him because his bed was warm and soft. E.B. said he and G.B. slept in their own room, and F.B. and C.B. slept with Charles. He also said his friend, M., slept with Charles.

At the jurisdictional and dispositional hearing, the court considered the documentary evidence and found the allegations under section 300, subdivisions (b) and

(d) to be true.  It found the children were at substantial risk in Charles's custody and ordered them placed in relative care.

## DISCUSSION

### I

Charles contends there was not substantial evidence to support the jurisdictional findings.

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence.  (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.)  "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also ' . . . view the record in the light most favorable to the orders of the juvenile court.'  [Citation.]"  (*In re Luwanna S*. (1973) 31 Cal.App.3d 112, 114.)  The appellant bears the burden to show the evidence is insufficient to support the court's findings.  (*In re Geoffrey G*. (1979) 98 Cal.App.3d 412, 420.)

Substantial evidence supports the true finding under section 300, subdivision (d) that the children were at substantial risk of sexual abuse because Charles had sexually abused a six-year-old non-related girl while the children were present in the same bed. The fact the court did not find Charles had sexually abused his own children is not conclusive.  A juvenile court is not required to wait until a child is actually hurt before assuming jurisdiction.  (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, disapproved on other grounds in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748,

6

fn. 6.)  The statutory language of section 300, subdivision (d) specifically allows jurisdiction based on substantial risk of sexual abuse to the child.[3]

The six-year-old alleged victim gave a detailed description of the sexual abuse she had endured.  She said on more than once occasion Charles had forced her to orally copulate him, he had anally penetrated her, he rubbed her vagina so hard that it hurt, and he forced her to masturbate him.  She said Charles's children were in the bed most of the time the abuse was occurring, and she had seen Charles touch F.B. and G.B. on their buttocks when they were in bed with him.  The ten-year-old victim described similar abuse.  Substantial evidence was presented that there was substantial risk of sexual abuse to the children.

We reject Charles's argument there was no evidence his children had witnessed any abusive behavior.  The court found true the allegations that Charles had sexually abused the six-year-old girl and that his children were present in the bed.  Charles's argument the court erred by relying on *In re R.V.* (2012) 208 Cal.App.4th 837 is without merit.  Although *In re R.V.* is factually distinct from this case in that there was strong evidence that R.V. witnessed the sexual abuse and had even helped the victim try to resist the father's advances (*id.* at p. 846), here, the court found the children were present during Charles's abuse of the victims.  The evidence provides ample support for the court's finding that Charles exposed the children to his behavior.

---

[3]     Section 300, subdivision (d) provides in part that a child comes within the jurisdiction of the juvenile court when "[t]he child has been sexually abused, or there is a substantial risk the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent . . . ."

Relying on *In re Maria R.* (2010) 185 Cal.App.4th 48, Charles argues even if this court were to uphold the juvenile court's finding that F.B. and G.B. were at risk, there was no evidence of substantial risk to the two boys, C.B. and E.B. There is a split of authority on the issue of whether evidence of sexual abuse of girls presents substantial evidence of substantial risk of sexual abuse to boys. (See *In re P.A.* (2006) 144 Cal.App.4th 1339, 1347; *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1414; *In re Maria R., supra,* 185 Cal.App.4th at pp. 65-67; *In re Rubisela E.* (2000) 85 Cal.App.4th 177, 197-199.) The California Supreme Court has granted review on the issue. (*In re I.J.* (2012) 207 Cal.App.4th 1351, review granted Sept. 19, 2012, S204622.)

In *In re Maria R, supra,* 185 Cal.App.4th at p. 52, this court ruled that although there was substantial evidence a father had sexually abused his two daughters and that their younger sister was similarly at risk, there was no evidence a younger brother was also at risk of sexual abuse. This court declined to expand the definition of sexual abuse within the meaning of section 300, subdivision (d) to include emotional or other harm that a child would suffer based on the disclosure of sexual abuse in a family or by inadvertently witnessing the abuse of a sibling. (*In re Maria R., supra,* 185 Cal.App.4th at pp. 65-67; accord *In re Rubisela E.*, *supra*, 85 Cal.App.4th at pp. 197-199.) In both *In re Maria R.* and *In re Rubisela E.,* however, the courts did not exclude the possibility that, even if there was no evidence the perpetrator had molested male children, brothers in the family could also be at risk. (*In re Maria R., supra,*185 Cal.App.4th at p. 67; *In re Rubisela E., supra,* 85 Cal.App.4th at p. 198.)

We note the holding in *In re Karen R.* (2001) 95 Cal.App.4th 84. In *In re Karen R.*, a 13-year-old daughter had been sexually abused by her father. The court held both her younger sister and younger brother were at substantial risk of sexual abuse. The court commented although the danger to the sister may be greater than the danger of abuse to the brother, the juvenile court did not err by finding that every child in the home was at substantial risk of sexual abuse. (*Id.* at p. 91.) The court in *In re P.A.*, *supra*, 144 Cal.App.4th at p. 1347, agreed with this view, stating "aberrant sexual behavior of a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior." Here, although we do not extend the definition of sexual abuse within the meaning of section 300, subdivision (d) to include harm from only witnessing the abuse, we hold Charles's abuse of young girls in the presence of his children put all of his children, F.B. and G.B., as well as C.B. and E.B., at substantial risk of sexual abuse. Charles has not shown error by the juvenile court's jurisdictional findings under section 300, subdivision (d) as to all four children.

Charles also has not shown a lack of substantial evidence to support the true findings of jurisdiction under section 300, subdivision (b). The evidence of substantial risk to the children under section 300, subdivision (d) supports the true finding under subdivision (b). Substantial evidence was presented to show Charles did not protect the children from being present while he sexually abused their young neighbors on several occasions. Substantial evidence supports the jurisdictional findings under section 300, subdivision (b).

9

## II

Charles also contends substantial evidence does not support the court's removal orders. He requests the children be placed with relatives without removing them from his custody.

The substantial evidence that supports the jurisdictional orders also supports the removal orders. We reject Charles's argument that the children could have been constructively placed in his care while he was incarcerated. Cases supporting custody with a noncustodial, incarcerated parent who is able to make proper arrangements for someone else to care for his children while he is incarcerated do not apply to Charles's situation. Charles was not a noncustodial parent. He had physical custody of the children at the time they were detained. Also, they were not removed from his custody under section 300, subdivision (g) based on his incarceration. Instead, they were removed because of true findings he had sexually abused neighborhood children. The doctrine of constructive placement does not apply. Substantial evidence supports the orders of removal.

DISPOSITION

The orders are affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.