Filed 2/26/14  In re Emily L. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re EMILY L. et al., Persons Coming Under the Juvenile Court Law. | B249305 |
| | (Los Angeles County Super. Ct. No. CK98474) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| JUAN L., | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Stephen Marpet, Referee.  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Denise M. Hippach, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Appellant Juan L. (father) appeals from the dependency court's judgment declaring his 12-year-old daughter, Emily L., and infant son, Jair L., dependents of the court under Welfare and Institutions Code[1] section 360, subdivision (d). The court based jurisdiction on evidence that father repeatedly molested his stepdaughter, Claudia G., for a period of four years beginning when Claudia was nine years old. Father contends his past sexual abuse of Claudia is insufficient to support jurisdiction over Emily and Jair because the abuse occurred over 10 years ago and there is no evidence that father has abused his other children. For the same reasons, father also contends the dispositional order removing the minors from his custody was not supported by substantial evidence. We reject these contentions and affirm.

## FACTUAL AND PROCEDUREAL BACKGROUND

### 1. *Factual History*

Father and Claudia L. (mother) are the biological parents of the dependent children, Emily L. and Jair L., and a 19-year-old daughter, Lesley L. Lesley lives in the family home, but is not a party to this dependency proceeding due to her age. Claudia G., who is now 23 years old, is mother's biological daughter and father's stepdaughter. Though father and Claudia are not biologically related, father raised Claudia since she was a year old and considers her to be his biological daughter. Claudia likewise acknowledges that father raised her since she was a baby and regards him as the only father she has ever known.

On December 18, 2012, the Department of Children and Family Services (the Department) received a referral alleging that Lesley had disclosed father sexually abused her half-sister, Claudia, several years ago when the family lived in Mexico. Lesley denied being molested or having any knowledge of father sexually molesting Emily. Nevertheless, the referring party expressed concern that Emily might be at risk of sexual

---

[1]     All further statutory references are to the Welfare and Institutions Code.

abuse due to father's past molestation of Claudia and mother's apparent failure to intervene.

Claudia confirmed the sexual abuse allegations. She reported father sexually molested her for a period of four years, beginning when she was nine years old. Father initially fondled her above her clothing. The abuse escalated to father fondling her breasts and vagina below her clothing. Father also masturbated in her presence. She recalled feeling confused and not understanding why father was doing this to her. She asked father to stop, but he refused.

Claudia also recalled father laying on top of her and kissing her, but denied he ever penetrated her. She stated father wanted her consent to penetrate her, which she refused. Notwithstanding her refusals, father persisted and attempted to persuade her, asking her "come on, just a little."

Claudia reported that most of the abuse occurred when mother was not home. Father regularly drove mother to a factory job at 5:00 o'clock in the morning. The abuse usually occurred when father returned home. On other occasions, Claudia recalled sleeping in the same bedroom as her parents. She reported that father would tap her on the back, which was her cue to go to the living room, where father would fondle her and masturbate.

When she was 12 years old, Claudia reported father's sexual abuse to mother. However, she later recanted and was not sure if mother ever confronted father about the allegation.

3

The abuse finally stopped when mother caught father in the act of molesting Claudia. Claudia was 13 years old. She was lying on the living room couch and father was kneeling near her, fondling her vagina over her clothing. She heard her mother coming from the other room, but father did not. Mother witnessed father kissing Claudia and fondling her, at which point mother verbally and physically accosted father and expelled him from the home. Mother then disclosed to Claudia that father was not biologically related to her. Claudia stated, " 'That is how I found out that he was not my biological father.' "

Mother allowed father to return to the family home a month after witnessing the molestation. At the time, Lesley was eight years old and Emily was three months old. Claudia recounted, " 'It was heart breaking to me that she didn't leave him. God is in my heart so I don't hate[,] but it has been difficult for me.' " Because her sisters were unaware that he was not her biological father, Claudia was forced to keep calling him "dad." She stated, " 'My mother worked my mind in[to] believing that I had to continue to call him dad.' " She came to feel that mother treated her differently than her sisters. Mother told Claudia, " 'You make me sick,' " and made other derogatory comments to her.

Claudia said she never spoke openly about the sexual abuse because "that is what she was expected to do." Claudia believed mother was angry the molestation had come to light, and that mother blamed her for being honest about father's sexual abuse. Claudia said she had been on "an emotional roller coaster" since the abuse came to the Department's attention, and she had "been thinking and crying a lot about what she endured and her relationship with her mother."

When the Department initially confronted father about the sexual abuse allegation, father denied any abuse had occurred and stated he was "surprised Lesley would say such a thing." Father attempted to discredit the allegation by positing that Lesley was upset because he had started a relationship with another woman during a period when he and mother were separated.

4

Father recanted his denial when he was confronted with Claudia's account of the abuse. He admitted to fondling Claudia above her clothing more than 15 times when she was 10 to 12 years old, but denied ever masturbating in her presence or fondling her below her clothing. He affirmed that the molestation usually occurred when mother was at work.

Father also confirmed that the abuse stopped only after mother caught him in the act of fondling Claudia in the family's living room. He reported that mother threw him out of the house, but allowed him to return a month later. He denied ever sexually abusing Claudia, or any of his other children, thereafter. However, when asked if he would have stopped sexually abusing Claudia had he not been caught, father responded, " 'I don't know. I don't know why I did it because it's not like I'm attracted to children.' "

Father indicated that although mother had allowed him to return to the family home, his marriage had "paid the price for his mistakes." He stated that mother has never trusted him and regularly "threw [the abuse] in his face." He admitted to being unfaithful to his wife, but denied any domestic violence.

Like father, mother initially denied the sexual abuse allegation, claiming that Lesley was "making things up." In subsequent meetings with the Department, mother claimed she had only seen father's hands "over" Claudia, but denied that father touched her, and continued to deny witnessing any sexual abuse.

Mother ultimately admitted she was aware Claudia had been sexually molested by father, and that she witnessed the abuse when Claudia was approximately 12 years old. After throwing father out of the house, mother told Claudia he was not her biological father. Mother explained, " 'Somehow I thought it would make her feel better and minimize what he had done to her.' " She admitted she allowed father to return to the family home a month later.

In 2010, mother separated from father for roughly two years when she learned he had been unfaithful with a co-worker. She went into a depression and began drinking excessively. In addition to father's marital infidelity, mother stated she was overwhelmed by Lesley's behavioral problems. In 2011, Lesley was "hanging out with the wrong crowd," sneaking her boyfriend into the house, and ran away from home for three months.

After Lesley ran away, mother's depression worsened, and she took a large amount of pills in an attempt to commit suicide. In the midst of her suicide attempt, she called father, who rushed her to the hospital, where she was treated. She said father was very supportive during her recovery, and eventually moved back into the home. By 2012, she was pregnant with their son Jair, who was born in February 2013.

Mother admitted that she attempted to conceal father's sexual abuse because she was afraid her children would be taken away. She likewise initially denied the allegation made to the Department because she was afraid Emily and Jair would be taken from her. She admitted father's abuse had been harmful to the family; stating, " 'After the sexual abuse of Claudia[,] I had lost all respect and things became ugly.' " She recognized a lot of damage had been done and indicated that she hoped, through therapy, the family would learn to forgive and come together.

Lesley said Claudia told her about father's sexual abuse when she was approximately 14 years old. At the time, Lesley had been getting into a lot of trouble, and Claudia told her about the abuse to demonstrate the sacrifice she had made to keep the family together. Lesley indicated her parents were angry about the disclosure and thought she had reported the abuse out of spite. Lesley denied being sexually abused.

Emily denied that father, or anyone else, had ever touched her inappropriately. She denied ever witnessing any domestic violence between her parents, but indicated that her mother would scream at father and father would leave the home. Emily understood the Department was investigating an allegation that father sexually abused Claudia. She did not believe Claudia's allegations were true. Emily's forensic medical examination returned normal results, which could neither confirm nor negate sexual abuse.

6

The Department observed Jair to be dressed appropriately and well cared for by mother. Jair had no visible marks or bruises and appeared to be a healthy baby boy.

2.     *Jurisdiction and Disposition*

The Department filed a dependency petition, seeking juvenile court jurisdiction over Emily and Jair under section 300, subdivisions (b) (failure to protect), (d) (sexual abuse), and (j) (abuse of sibling), based on identical allegations that father sexually abused Claudia when Claudia was a minor, and mother knew of the abuse, but failed to protect the children by allowing father to reside in the home and have unlimited access to the children.

At the jurisdiction and disposition hearing, the Department argued dependency jurisdiction and separation from father's physical custody were necessary because (1) it was undisputed that father had repeatedly sexually abused Claudia when she was between the ages of nine and 13 years old; (2) the abuse ceased only after mother caught father in the act of molesting Claudia; (3) despite mother witnessing her daughter's molestation, mother permitted father to reside in the home with Claudia and her other children; (4) the family had never addressed or recovered from father's sexual abuse of Claudia, as evidenced by the parents' attempts to conceal the abuse and ongoing dysfunction in the family; and (5) father's history of abuse, without any treatment or counseling, posed a substantial danger to Emily and Jair if he were permitted to stay in the home.

Father, mother and the minors' counsel all joined in arguing the case should be dismissed because (1) the abuse had occurred more than 10 years ago; (2) as a stepdaughter, Claudia was differently situated than father's biological children; (3) father's biological daughters each denied having been sexually abused by father; and (4) the evidence was disputed as to whether the family dysfunction stemmed from father's past sexual abuse of Claudia.

The juvenile court sustained the jurisdiction petition as pled under section 300, subdivisions (b), (d) and (j). In adjudging Emily and Jair dependents, the court cited the undisputed evidence that father "sexually abused his stepdaughter Claudia when she was between the ages of nine and 13." The court also cited the family's history of

dysfunction and observed that, while Emily appeared to be "okay" at this point, "that doesn't negate the fact that these parents haven't really addressed sex abuse . . . on their children, and if I'm dealing with a child who's now 11, I think it's extremely important for them to address all of these issues to make sure that [Emily] doesn't have the problems that Claudia had . . . so that the risk can be ameliorated by their involving themselves in sex abuse counseling."

Based on the same evidence, the juvenile court found a substantial danger existed to the minors' physical and mental well-being and no reasonable means were available to protect the minors without removal from father's custody. The court ordered Emily and Jair to be placed with mother, with monitored visits for father, and enhancement services for father, including participation in a sexual abuse program for perpetrators and individual counseling to address issues of family dysfunction and child protection. The court also ordered family reunification services for mother to address sexual abuse awareness.

## DISCUSSION

1. *Substantial Evidence Supports Jurisdiction*

Father contends the jurisdictional findings are not supported by substantial evidence that Emily and Jair are presently at risk of suffering abuse or neglect as defined in section 300. In essence, father maintains that evidence of his sexual molestation of his stepdaughter 10 years ago, without evidence of subsequent abuse, is insufficient to sustain dependency jurisdiction over his biological children as a matter of law. We disagree.

a. *Standard of review*

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.]

8

"We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citation.]" [Citation.]' " (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

   b.   *Section 300, subdivision (j) authorizes dependency jurisdiction where the sexual abuse of a sibling is egregious, though the probability the child will be abused may be low*

   " 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J., supra,* 56 Cal.4th at p. 773.)  Here, section 300, subdivision (j) most closely describes Emily's and Jair's situation.  Accordingly, our review will focus on that subdivision. (See *Id.* at pp. 773-774.)

   Section 300, subdivision (j) authorizes jurisdiction where there is evidence that "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."  In determining whether a substantial risk exists, subdivision (j) directs the juvenile court to "consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

" '[S]ubdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e), or (i). Subdivision (j) *does not* state that its application is limited to the risk that the child will be abused or neglected *as defined in the same subdivision* that describes the abuse or neglect of the sibling. Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the child will be harmed under subdivision (a), (b), (d), (e) *or* (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling.' " (*In re I.J., supra,* 56 Cal.4th at p. 774.) " 'The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' " (*Ibid.*)

In *I.J.,* our Supreme Court resolved a split among the Courts of Appeal over whether sexual abuse of a daughter supports finding a son to be a dependent of the court pursuant to section 300, subdivision (j). (*In re I.J., supra,* 56 Cal.4th at pp. 774-775.) There, the juvenile court sustained a petition brought with respect to the father's five children—daughters who were then 14 and nine years old, twin 12-year-old boys, and a boy who would soon turn eight years old. The petition alleged, " 'on prior occasions for the past three years,' father sexually abused [the oldest daughter] 'by fondling the child's vagina and digitally penetrating the child's vagina and forcefully raped the child . . .' " thereby placing " 'the child and the child's siblings . . . at risk of physical harm, damage, danger, sexual abuse and failure to protect.' " (*Id.* at p. 771.) There was no evidence or claim that the father sexually abused or otherwise mistreated his three sons, and the evidence indicated the boys had not witnessed any sexual abuse and were unaware of it before the dependency proceeding began. The boys also said they felt safe in the home and liked living with their parents. (*Ibid.*)

The Supreme Court held the evidence was sufficient to support the juvenile court's dependency finding as to the male children, notwithstanding the absence of any evidence that the father mistreated his sons. (*In re I.J., supra,* 56 Cal.4th at p. 778.) The court observed that by directing the juvenile court to consider the surrounding circumstances and nature of the father's sexual abuse of his daughter, "subdivision (j) implies that the more egregious the abuse, the more appropriate for the juvenile court to assume jurisdiction over the siblings." (*Ibid.*) The court explained, " 'Some risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great. . . .  Conversely, a relatively high probability that a very minor harm will occur probably does not involve a "substantial" risk.  Thus, in order to determine whether a risk is substantial, the court must consider both the likelihood that harm will occur and the magnitude of potential harm . . . .' " (*Ibid.*) "In other words," the Supreme Court stated, "the more severe the type of sibling abuse, the lower the required probability of the child's experiencing such abuse to conclude the child is at a substantial risk of abuse or neglect under section 300.  If the sibling abuse is relatively minor, the court might reasonably find insubstantial a risk the child will be similarly abused; but as the abuse becomes more serious, it becomes more necessary to protect the child from even a relatively low probability of that abuse." (*Ibid.*)

In resolving the Court of Appeal split in favor of jurisdiction over the male children, the Supreme Court discussed this court's *In re P.A.* (2006) 144 Cal.App.4th 1339 (*P.A.*) opinion with approval.  (See *In re I.J., supra,* 56 Cal.4th at pp. 775-776.) In *P.A.*, the juvenile court assumed jurisdiction over a nine-year-old girl and her two male siblings based on evidence that the father had sexually abused his daughter by touching her vagina on top of her underwear.  (*In re P.A.,* at p. 1341.)  We affirmed the judgment as to the male siblings, notwithstanding the absence of evidence indicating father abused his sons.  (*Id.* at p. 1345.)  In concluding the evidence of father's past sexual abuse of his daughter was alone sufficient to sustain jurisdiction as to the male children, we reasoned, citing our early opinion *In re Karen R.* (2001) 95 Cal.App.4th 84, 90-91, that "aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of

11

aberrant sexual behavior." (*In re P.A.,* at p. 1347; see also *In re I.J.,* at p. 775 [discussing *Karen R.* with approval].)

We also observed that our conclusion in *P.A.* was "consistent with section 355.1, subdivision (d), which provides in pertinent part that: '(d) Where the court finds that either a parent, a guardian, or any other person who resides with . . . a minor who is currently the subject of the petition filed under Section 300 . . . (3) has been found in a prior dependency hearing . . . to have committed an act of sexual abuse, . . . that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect.  The prima facie evidence constitutes a presumption affecting the burden of producing evidence.' " (*In re P.A., supra,* 144 Cal.App.4th at p. 1347.) Although we acknowledged that "section 355.1, subdivision (d), was not triggered . . . because there was no prior dependency proceeding at the time of the jurisdictional hearing," we reasoned the statute "nonetheless evinces a legislative determination that siblings of sexually abused children are at substantial risk of harm and are entitled to protection by the juvenile courts." (*Ibid.*)  In *I.J.,* the Supreme Court adopted this reasoning, noting that "[w]hen it enacted subdivision (d) of section 355.1, the Legislature found 'that children of the State of California are placed at risk when permitted contact with a parent or caretaker who has committed a sex crime.' " (*In re I.J., supra,* 56 Cal.4th at p. 779, quoting Stats. 1999, ch. 417, § 1, p. 2780.)  Thus, the Supreme Court concluded, even without a finding of sexual abuse in a prior proceeding, "section 355.1 is relevant because it evinces a legislative intent that sexual abuse of someone else, *without more*, at least supports a dependency finding." (*In re I.J.*, at p. 779, citing *In re P.A.*, at p. 1347, italics added.)

> c. *Father's past sexual abuse of Claudia was egregious and, coupled with evidence of the parents' failure to address the abuse, was sufficient to sustain dependency jurisdiction over Emily and Jair.*

Contrary to father's premise, the foregoing authorities make clear that past sexual abuse of a sibling, "without more," is substantial evidence sufficient to support a

dependency finding under section 300, subdivision (j). (*In re I.J., supra,* 56 Cal.4th at p. 779.) Here, the evidence was undisputed that father repeatedly sexually molested the minors' sibling[2]—at least 15 times by father's account, and significantly more frequently by Claudia's. That molestation continued for a period of three to four years, beginning when Claudia was just nine years old, and only ceased when mother caught father in the act and expelled him from the home. This was substantial evidence that Emily and Jair faced risk of abuse or neglect, as defined in section 300, subdivision (a), (b), (d), (e), or (i). (§ 300, subd. (j).)

Notwithstanding the foregoing evidence, father contends the passage of 10 years, without further abuse, negates a finding of present substantial risk to Claudia's siblings, as a matter of law. Though it might be reasonable to infer with the passage of time that the probability of relapse was less, as our Supreme Court explained, " 'Some risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great.' " (*In re I.J., supra,* 56 Cal.4th at p. 778.) This is why the juvenile court is directed to consider all the surrounding circumstances and the nature of the abuse. Again, as the Supreme Court explained, "subdivision (j) implies that the more egregious the abuse, the more appropriate for the juvenile court to assume jurisdiction over the siblings." (*Ibid.*) Thus, "as the abuse becomes more serious, it becomes more necessary to protect the child from even a relatively low probability of that abuse." (*Ibid.*)

---

[2]     We reject father's implicit contention that Claudia being his stepdaughter absolutely negates jurisdiction over his biological children. A sibling's biological relationship to her parent or guardian is a factor the juvenile court may consider in determining whether the parent's abuse of the sibling poses a substantial risk to his other children; however, it is a factor that must be considered in context with all surrounding circumstances. (§ 300, subd. (j); *In re I.J., supra,* 56 Cal.4th at p. 778.) Here, the surrounding circumstances included the undisputed facts that father had raised Claudia since she was one year old, he was the only father she had ever known, and both father and Claudia regarded him as her biological father. Based on these circumstances, the juvenile court could reasonably conclude that Claudia's stepdaughter status did not negate a finding of substantial risk as to Emily and Jair.

13

Here, the passage of time without further abuse was one factor for the juvenile court to consider; but there were many other surrounding circumstances that cautioned against declining jurisdiction based solely on the passage of time.  In addition to the egregious nature of the abuse, the evidence also showed that, despite witnessing father's sexual abuse of her daughter, mother allowed father to return to the family home—to live, at the time, with Claudia, Lesley and Emily—after only one month and without requiring father to seek counseling to address the risk his past conduct posed to her children.  Father confessed he was uncertain whether he would have stopped molesting Claudia had he not been caught.  He admitted, " 'I don't know why I did it,' " but denied having any attraction to children, even though he has never sought treatment to identify the origins of his aberrant sexual behavior.  The parents instead attempted to conceal the abuse from their other children.  Mother convinced Claudia not to speak openly about the abuse she endured and to continue to refer to father as "dad."

The record also suggests the parents' failure to address the abuse led to discord in the marriage and dysfunction in the family.  Mother admitted that, after discovering the molestation, she " 'lost all respect [for father] and things became ugly.' "  Father admitted to marital infidelity, and expressed resentment that mother has never trusted him and regularly "threw [the abuse] in his face."  The marital and family discord culminated in mother attempting suicide when the children were alone in father's care.  All of these surrounding circumstances provided a sufficient basis for the juvenile court to reasonably conclude that the passage of time did not negate the substantial risk posed by father's past sexual abuse and the apparent dysfunction it inflicted on the family.  (Cf. *Los Angeles County Department of Children and Family Services v. Superior Court* (2013) 222 Cal.App.4th 149, 161-162 [holding passage of 25 years since father's earlier sex crimes, taken alone, was not sufficient to overcome presumption of dependency jurisdiction under section 355.1, subdivision (d)].)

14

2.      *Substantial Evidence Supports the Disposition Order*

Father contends the disposition order removing Emily and Jair from his physical custody was not supported by substantial evidence "[g]iven the respective ages of the children," "the fact that Emily wanted to be reunited with her father," and the fact that "[b]oth parents, without Dependency intervention, had already ensured their children were well cared for, safe, and free of abuse and neglect." We disagree.

We review the disposition order for substantial evidence, drawing all reasonable inferences from the evidence to support the order, without reweighing the evidence or exercising independent judgment. (*In re I.J., supra,* 56 Cal.4th at p. 773.)

The facts father cites are relevant to a juvenile court's inquiry into whether a substantial risk exists under section 300, subdivision (j); but they are not the only factors to be considered in assessing all "the circumstances surrounding the abuse or neglect of the sibling." (§ 300, subd. (j); *In re I.J., supra,* 56 Cal.4th at p. 778.) The same is true under section 361, subdivision (c)(1). While the facts cited by father are relevant, they are not the only facts to be considered in determining whether removing the children from father's custody was necessary to protect their health and safety. (§ 361, subd. (c)(1).)

As we have discussed, mother and father sought to conceal the abuse, even after it was exposed by Lesley's disclosure. Father has not completed counseling to assess and treat the as-yet-unidentified origins of his aberrant sexual behavior, and the parents' failure to openly address these issues has evidently caused discord and dysfunction in the family. Notwithstanding the facts father cites, the evidence of these surrounding circumstances constitutes substantial evidence supporting the juvenile court's disposition order.

15

## DISPOSITION

The judgment and disposition order are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:



CROSKEY, Acting P. J.



ALDRICH, J.