Filed 8/27/24 In re J.F. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.F. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>E.F.,<br><br>    Defendant and Appellant. | G063806<br><br>(Super. Ct. Nos. 23DP1304 & 23DP1305)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, June Jee An, Judge. Reversed.

Tracy M. De Soto, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, and Debbie Torez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

E.F. (Father) appeals from the juvenile court's order sustaining jurisdiction to his 17-year-old son J.F. and ordering him removed from his custody. Father argues insufficient evidence supported both findings. Because we agree there was insufficient evidence to support the jurisdictional finding, we need not address his other contention. We reverse the order.

FACTS

*I. Detention and Petition*

Police arrested Father for sexually abusing his 15-year-old daughter, A.F. Police took A.F. and J.F. (collectively children or minors) into custody. It was alleged that Father sexually abused A.F. on two occasions in August 2023. On the first occasion, Father rubbed A.F.'s vagina over her clothes while she slept. On the second occasion, while A.F. slept, Father squeezed her buttocks and rubbed her vagina with his thumb. Father tried to put his hand down her leggings but they were too tight. On both occasions, Father stopped when J.F. walked into the bedroom they all shared. A.F. disclosed the abuse to her paternal aunt, C.F., who also lived there.

Father said A.F. reminded him of the children's mother M.F. (Mother) and admitted he may have "quickly" touched her genitals.[1] J.F. denied Father sexually abused him or that he knew Father sexually abused A.F. A.F. stated Father knew that both his father and brother had sexually abused her and "it hurts [her] heart" Father did the same.

In the detention report, the Orange County Social Services Agency (SSA) stated it was concerned Father will continue to sexually abuse

---

[1] Mother moved out of the house 10 years earlier and had not had any contact with the children for six years. Mother did not appeal, and we discuss her only when necessary.

A.F., "and/or" J.F., which could result in emotional trauma. The children were placed at Orangewood Children and Family Center.

SSA filed a petition as to A.F. and J.F. The petition alleged Father failed to protect both children (Welf. & Inst. Code, § 300, subd. (b)),[2] sexually abused A.F. (§ 300, subd. (d)), and abused a sibling as to J.F. (§ 300, subd. (j)). The juvenile court ordered the children detained.

## II.  Jurisdiction and Disposition

### A.  Reports

In its jurisdiction/disposition report, SSA stated Father's criminal case was proceeding. The children remained at Orangewood.

The social worker reported that Mother said J.F. was depressed and wanted to leave Orangewood. When the social worker asked J.F. why he was not in Father's care, he said because Father did something inappropriate to A.F. When she asked how the case should be resolved, J.F. said, "I just don't know," "he only sometimes felt comfortable in Father's care," and "he was still debating."

Weeks later, J.F. told the social worker he wanted to leave Orangewood, and the social worker reported he was "guarded" about the allegations. The social worker reported J.F. ran away from Orangewood the previous weekend. J.F. told her that he wanted to live with C.F.

The social worker reported that J.F. cried during one 30-minute visit with Father. She stated that after another visit, J.F. said he enjoyed visits with Father and wanted to continue them.

---

[2]      Undesignated statutory references are to the Welfare and Institutions Code.

Father told the social worker that he would move out of the residence so the children could live with C.F. Both children told the social worker they wanted to live with C.F. Later, the social worker confirmed that C.F. was approved for placement and the children would be placed with her the following week.

*B. Hearing*

At the multi-day hearing, the juvenile court admitted the SSA reports and heard argument. Minors' counsel informed the court that J.F. was open to reunifying with Father. Minors' counsel later told the court that J.F. said he would "maybe" be comfortable living with Father. Father objected as to any jurisdictional findings and argued J.F. would not be at substantial risk in Father's care because he was not a victim of abuse and he was almost 18 years old. He also requested that if the court were to order J.F. removed, SSA should retain discretion to allow him to return home to Father if appropriate. SSA contended the court should sustain an amended jurisdictional petition as to both minors and to remove them from parental custody with reunification services for J.F.

With respect to J.F., the juvenile court sustained the amended jurisdictional petition under section 300, subdivisions (b)(1) and (j). Relying on *In re I.J.* (2013) 56 Cal.4th 766 (*I.J.*) and *In re Karen R.* (2001) 95 Cal.App.4th 84 (*Karen R.*), the court opined J.F. was at a risk of harm. The court declared J.F. a dependent, found that removal from parental custody was necessary, granted reunification services to both parents, and granted

4

SSA the discretion to return J.F. to Father's care if deemed appropriate. Father appealed from the court's February 7, 2024, order.[3]

## DISCUSSION

Father argues insufficient evidence supported the juvenile court's jurisdictional finding as to J.F.[4] We agree.

Section 300 states the juvenile court may exercise jurisdiction over any child who comes within any one of several descriptions. Subdivision (b) of that section describes a child who has suffered or is at substantial risk of suffering serious physical harm as a result of the failure or inability of his parent to supervise or protect the child. Subdivision (j) of that section applies if (1) the child's sibling has been abused or neglected as defined and (2) there is a substantial risk that the child will be abused or neglected as defined.

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial

---

[3] While the matter was pending in this court, SSA submitted a motion to vacate submission, a request for judicial notice, and a motion to dismiss. SSA requests we take judicial notice of juvenile court records from a hearing on August 1, 2024, a hearing that occurred after the February 7, 2024, order Father appealed from. Because all of the documents submitted with SSA's request for judicial notice reflect actions that occurred after the dispositive order, they are not properly before us. What is before us is the court's February 7, 2024, order.

[4] Father does not argue the juvenile court erred as to A.F.

5

court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] "'[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].'" [Citation.]" [Citation.]' [Citation.]" (*I.J., supra*, 56 Cal.4th at p. 774.)

In *I.J., supra,* 56 Cal.4th at page 771, our Supreme Court addressed the issue we face here, the court's exercise of jurisdiction over the victim's siblings. In that case, the father had repeatedly sexually abused his teenage daughter over the course of three years. (*Ibid*.) The abuse included fondling, digital penetration of the child's vagina, oral copulation of the child's vagina, forcing the child to watch pornographic videos with the father, and forcible rape. (*Ibid*.) The court opined the father's behavior was "'aberrant in the extreme.'" (*Id*. at p. 778.) The court noted "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*Id*. at p. 773.) Instead, there need only be a "'substantial risk'" of abuse or neglect. (*Ibid*.)

The *I.J.* court explained that juvenile courts are to consider "'the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm,'" including "'the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.'" (*I.J., supra*, 56 Cal.4th at p. 774, quoting § 300, subd. (j).) Courts also may consider the egregiousness of the abuse and the "violation of trust"

6

shown by sexually abusing one child "while . . . other children [are] living in the same home and could easily have learned of or even interrupted the abuse." (*Id.* at p. 778.) "[A]fter considering the nature and severity of the abuse and the other specified factors, the juvenile court is . . . to use its best judgment to determine whether or not the particular substantial risk exists." (*Id.* at p. 779.) The court stated the following: "'[S]exual or other serious physical abuse of a child by an adult constitutes a fundamental betrayal of the appropriate relationship between the generations. . . . When a parent abuses his or her own child, . . . the parent also abandons and contravenes the parental role. Such misparenting is among the specific compelling circumstances which may justify state intervention, including an interruption of parental custody. [Citation.]' [Citation.]" (*I.J., supra*, 56 Cal.4th at p. 778.)

The *I.J.* court concluded the "serious and prolonged nature" of the father's sexual abuse of his 14-year-old daughter placed the girl's three brothers (12-year-old twins and an eight-year-old) at risk of harm, as defined by section 300, subdivision (j), even though none of the boys was mistreated, and none had witnessed nor been aware of the father's sexual abuse. (*I.J., supra*, 56 Cal.4th at pp. 771, 778.) The court cautioned, however, against an overbroad interpretation of its decision: "In upholding the assertion of jurisdiction in this case, we are not holding that the juvenile court is compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused. We merely hold the evidence in this case supports the juvenile court's assertion of jurisdiction." (*I.J., supra*, 56 Cal.4th at p. 780, citing *In re Jordan R.* (2012) 205 Cal.App.4th 111, 137–139 [upholding juvenile court's refusal to assert jurisdiction].)

In *Karen R., supra,* 95 Cal.App.4th at page 87, the father raped and beat his daughter while his son was in the house. The issue was whether

7

the son could be found a dependent child of the court under section 300, subdivision (d). (*Id.* at p. 89.) That court held: "While no act of sexual abuse occurred in [the son's] presence, the abuse that did take place in [the son's] presence clearly was sufficient to warrant the conclusion that a normal child in [the son's] position would have been greatly disturbed and annoyed at having witnessed these events. Thus, the juvenile court properly could conclude [the son] personally had been the victim of child molestation and thus had been sexually abused within the meaning of section 300, subdivision (d). [Citation.]" (*Karen R., supra,* 95 Cal.App.4th at p. 90.) The court added: "[W]e conclude a father who has committed two incidents of forcible incestuous rape of his minor daughter reasonably can be said to be so sexually aberrant that both male and female siblings of the victim are at substantial risk of sexual abuse within the meaning of section 300, subdivision (d), if left in the home. . . . Although the danger of sexual abuse of a female sibling in such a situation may be greater than the danger of  sexual abuse of a male sibling, the danger of sexual abuse of the male sibling is nonetheless still substantial." (*Id.* at pp. 90–91.)

Here, at the outset, we must articulate the focus of our review. *I.J., supra*, 56 Cal.4th at pages 773–774, concerned subdivision (j) of section 300. *Karen R., supra,* 95 Cal.App.4th at page 89, concerned subdivision (d) of section 300. In making its ruling here, the juvenile court cited to these cases in exercising jurisdiction pursuant to subdivisions (b) and (j). Unfortunately, the court did not articulate the basis for its ruling. Although relying primarily on *I.J.*, which concerned subdivision (j), the court here did not discuss that subdivision's circumstances, as the *I.J.* court did. (See *I.J., supra*, 56 Cal.4th at p. 778.) Neither *I.J.* nor *Karen R.* concerned subdivision (b). County counsel asserts that the same reasons supporting exercise of

8

jurisdiction pursuant to subdivision (j) supports jurisdiction as to subdivision (b). Thus, our review hinges entirely on the similarity of the facts of this case to *I.J.*, and to a lesser extent, *Karen R.* Having detailed at length the facts of *I.J.* and *Karen R.*, there can be no doubt the cases are factually dissimilar to the facts here.

Father's abuse of A.F. was neither prolonged nor as severe. In *I.J.*, the sexual abuse involved fondling, digital penetration, oral copulation, compelled viewing of pornographic videos, and forcible rape over the course of three years. In *Karen R.,* the sexual abuse involved forcible rape on two occasions months apart. Here, by contrast, the sexual abuse involved Father rubbing A.F.'s genitals over her clothing and trying, but failing, to put his hands down her leggings. A.F. did not allege Father exposed his penis or penetrated her. Father's rubbing the fully clothed A.F. and attempting to put his hand down her leggings was nothing like the "serious and prolonged" abuse committed in *I.J.* or the "incidents of forcible incestuous rape" in *Karen R.* As repugnant as Father's conduct was, it does not rise to the level of abhorrent abuse in *I.J.* and *Karen R.* (*I.J., supra*, 56 Cal.4th at p. 778 [prolonged and egregious sexual abuse fundamental betrayal of parental role].) As the *I.J.* court recognized, "If the sibling abuse is relatively minor, the court might reasonably find insubstantial a risk the child will be similarly abused." (*I.J., supra*, 56 Cal.4th at p. 778.)

Other circumstances lead us to the conclusion J.F. was not at risk of sexual abuse. Father admitted to touching 15-year-old A.F. because she reminded him of Mother (Father married Mother when she was 15 years old). Needless to say, this could not be said of J.F. who is male and almost 18 years old. Additionally, J.F. denied Father attempted to touch him. Although J.F. shared a bedroom with Father and A.F. and walked into the room when

9

Father was touching A.F., J.F. stated he was unaware of the two incidents. J.F. never expressed he was concerned of being abused. Admittedly, J.F. gave statements somewhat inconsistent concerning living with Father. At first, he felt completely safe living with Father. At the hearing though, he answered, "[M]aybe" when asked if he wanted to return to Father. That being said, J.F. never expressed any fear of Father, and no one inquired further as to J.F.'s relationship with Father.

We are mindful of the juvenile court's duty to focus on "ensur[ing] the safety, protection, and physical and emotional well-being of children who are at risk" of sexual abuse. (§ 300.2, subd. (a).) However, heeding the *I.J.* court's admonition against an overbroad interpretation of its decision, we cannot conclude on this record Father's limited sexual abuse of his 15-year-old daughter constitutes evidence that his 17-year-old son is also at substantial risk of being sexually abused.[5] Because the court erred by concluding Father's sexual abuse of A.F. by itself constituted substantial evidence that J.F. was also at risk of being sexually abused, and based its jurisdictional and dispositional order on only this evidence, the order is reversed.

---

[5] County counsel is correct that section 355.1, subdivision (d), "does not directly apply" here because Father has not suffered a sexual abuse conviction.

10

## DISPOSITION

The order is reversed.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


GOODING, J.