Filed 4/17/14  In re D.D. CA2/7
Reposted to correct page numbering; no change to text

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re D.D., a Person Coming Under the Juvenile Court Law. | B250907 <br><br> (L.A.S.C. No. CK97682) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> EDUARDO D., <br><br> Defendant and Appellant. | **ORDER MODIFYING OPINION** <br><br> **NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on April 10, 2014, and not certified for publication, be modified as follows:

1.  On the title page, the superior court judge was erroneously listed as "Carlos E. Chavez."  It should read: "Carlos E. Vazquez."

The foregoing does not change the judgment.

**PERLUSS, P. J.**          **WOODS, J.**          **ZELON, J.**

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re D.D., a Person Coming Under the Juvenile Court Law. | B250907 <br><br> (L.A.S.C. No. CK97682) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> EDUARDO D., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Carlos E. Chavez, Judge. Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Eduardo D., the father of minor D.D., appeals from an order of the juvenile court that declared D.D. and her half-sisters, H.A. and Patience P., dependents of the court under Welfare and Institutions Code section 300,[1] subdivisions (b), (d) and (j) based on appellant's multiple instances of sexual abuse of H.A. over a period of seven to eight months. Appellant argues that the juvenile court's jurisdictional findings and disposition orders must be reversed because the girls remained in their mother's care throughout the proceedings and appellant had moved out of the family home. As a result, appellant argues by the time of the jurisdictional and dispositional hearing he no longer posed a current risk of harm to the minors and accordingly, the juvenile dependency court's jurisdictional finding that a substantial risk existed was not supported by sufficient evidence. For the reasons articulated below, we reject appellant's arguments and affirm the orders of the juvenile court.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

---

[1]     All further code references, unless indicated otherwise, are to the Welfare and Institutions Code.

[2]     On January 16, 2014, the juvenile dependency court terminated dependency jurisdiction in this matter based on receipt of a custody order. Although arguably termination of the court's jurisdiction could render this appeal moot, the sustained jurisdictional findings against appellant may have had an adverse effect on his custody rights. Moreover, the jurisdictional findings could affect appellant in the future in other contexts, or if dependency proceedings were ever initiated again with regard to D.D. or appellant's other children, if any. (See *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431-1432 [holding that appeals in dependency matters are not moot if the error asserted may affect the outcome of a subsequent proceeding].) Consequently, we reach the merits of this appeal notwithstanding the court's order terminating dependency jurisdiction.

4

At the time the minors in this case, D.D., age five, Patience P., age 14, and H.A., age 11, came to the attention of the Department of Children and Family Services ("DCFS"), they lived with their mother Jasmine V.[3] ("Mother") and appellant who was Mother's long-time boyfriend and the father of D.D.[4]

In January 2013, H.A. disclosed to a school friend that beginning in May or June 2012, appellant had sexually abused her on a number of occasions. The police and DCFS were alerted, and they interviewed H.A. H.A. told the police investigator and later the DCFS social worker that she shared a bed with her older sister Patience P. H.A. described numerous occasions when appellant would get into bed next to H.A. at night. H.A reported that the abuse began with instances in which appellant would get into bed with her and rub her shoulders and all over her body. She said that appellant had touched her in this manner 10 to 15 times. Later in November or December 2012, she stated that appellant would rub his groin area on her buttocks and sometimes he would grab her hips and push his penis into her buttocks. She said she could feel him taking off his shorts and pulling his penis out of his boxers to rub against her. She also disclosed that on one occasion appellant tried to push his penis into her anus over her gym shorts. H.A. said appellant would abuse her when he thought she was asleep. H.A. said that sometimes she

---

[3]     Mother is not a party to this appeal.

[4]     H.A. and Patience P. have different fathers. Neither H.A.'s nor Patience P.'s father is subject of the petition, or a party to this appeal. According to the jurisdictional and disposition report, both H.A.'s father (A.A.) and Patience P.'s father (Adrian P.) have regular contact and visits with their respective daughters, and share legal custody of their daughters with Mother.

5

tried to prevent the touching by sitting up or moving so he would notice she was awake. When she moved, sometimes appellant would leave, and other times he would pretend to be asleep and later try to touch her again when he thought she was asleep.

H.A. said appellant never spoke to her about the abuse while it was occurring or afterward. H.A. stated she did not tell Mother about appellant's conduct because she did not want Mother to suffer; she recalled that Mother was sad once when Mother and appellant had separated.[5] H.A. also expressed that she did not report the incident because she thought it would ruin Patience P.'s upcoming Quiceanera (15th birthday celebration) and H.A. did not want D.D. to be without her father.

Mother was also interviewed. She confirmed that Patience P. and H.A. shared a room and slept together on a day bed with a pull-out mattress. She stated that she and appellant slept on the sofa with D.D. in another room.[6] She said occasionally she and appellant slept in H.A.'s room when the family had guests, and appellant would sleep in the bed with H.A. Mother also acknowledged on those occasions she would end up moving to the living room in the middle of the night.

Mother said she did not know about the abuse; she was shocked and devastated by the information. She stated that she had dated appellant for nine years and that they had lived together for seven to eight years. She also said that she never suspected appellant would abuse her daughters. She further stated that appellant had been "like a father" to

---

[5] H.A. also stated that if Mother had read her diary she would likely have discovered the abuse because H.A. had written about it.

[6] Mother's brother and her stepfather also shared a room in the family home.

6

all of the children  According to the detention report, Mother told the social worker that "as soon as she became aware of [ ] this investigation, she asked [appellant] to leave the home until the investigation is completed."  According to Mother when she confronted appellant about the allegations he denied doing anything wrong.  Mother said she wanted to protect her children and would do what was best for them.

The social worker also interviewed Patience P. and D.D., both of whom denied being the victims of sexual abuse.  Patience P. stated that she never witnessed appellant act inappropriately towards H.A. and knew nothing about the allegations of sexual abuse; she denied she ever heard appellant get into bed with her and H.A, but Patience P. also admitted she was a deep sleeper.

Appellant was also interviewed.[7]  He denied sexually abusing H.A.  Although he admitted he slept in the girls' room, he also claimed that whenever they slept in the room, he and Mother slept on one bed and the girls slept on another bed.

On February 1, 2013, DCFS obtained a removal order to detain D.D. from appellant's custody.  DCFS recommended to the juvenile court that the children remain with Mother and that appellant have monitored visits with his daughter.  Thereafter, on February 7, 2013, DCFS filed a dependency petition pursuant to section 300, subdivisions (b), (d), and (j) on behalf of the minors alleging appellant had sexually

---

[7]    Appellant refused to be interviewed by the police without his counsel present.  He also refused to take a polygraph test.  The police detective who investigated the case indicated that he believed H.A.'s allegations to be credible and that he was going to take the case to the district attorney's office.  According to the jurisdiction and disposition report, appellant had convictions in 2003 and 2007 for driving under the influence, and a 2006 conviction for driving with a suspended license.

abused H.A. by repeatedly rubbing his penis on her buttocks, grabbing her by the hips and thrusting his penis into her buttocks, fondling her shoulders and legs, and attempting to sodomize her. DCFS further alleged that Mother knew or should have known about the abuse and did not protect H.A., and that the conduct of the parents placed the children at risk of harm.

At the detention hearing, the court found appellant to be the presumed father of D.D. and granted monitored visits with her. The court also ordered the children detained from their respective fathers and released to Mother's custody.

In the jurisdiction and disposition report, DCFS recommended the children be declared dependents of the juvenile court, that Mother receive family maintenance services, and Father receive family reunification services, including sexual abuse counseling for perpetrators, conjoint counseling with his child, parenting classes, and monitored visits with D.D.

On March 21, 2013, the fathers of Patience P. and H.A. appeared in court for the first time and were found to be the presumed fathers of the children.

The court conducted the jurisdictional hearing on June 25, 2013. The police officer who conducted the police investigation testified. H.A. also testified as to the acts of sexual abuse. She also testified that Mother never observed any of the incidents.

Mother's counsel and the children's attorney argued, and respondent's counsel conceded, that there was not sufficient evidence that Mother knew or should have known about the abuse. They requested that the juvenile court strike the allegations against Mother from the petition. The juvenile court agreed, and struck the references to Mother in all the counts of the section 300 petition. Appellant requested that the court dismiss the section 300 petition, arguing that his client's behavior did not constitute unlawful sexual behavior.

The juvenile court found H.A.'s testimony to be very credible, and sustained the section 300 petition as amended, as follows:

"b-1, d-1, j -1 [¶] On numerous prior occasions, from June 10,2012 to January 20, 2013, the children Patience P[.], [H.A.], and [D.D.]'s mother Jasmine V[.]'s male companion, Eduardo D[.], father of the child [D.D.], sexually abused the child [H.A.] by repeatedly rubbing the D[.] father's penis on the child's buttocks. The sexual abuse of the child by the D[.] father occurred in the child's home, in the child's bedroom, while the sibling Patience slept in the bedroom. Such sexual abuse of the child by the D[.] father endangers the child's physical health and safety, creates a detrimental home environment, and places the child and the child's siblings, Patience and [D.D.], at risk of physical harm, damage, danger, sexual abuse and failure to protect."

Thereafter, the juvenile court declared the children dependents of the court at the disposition hearing. The court ordered D.D. removed from appellant's custody and placed with her with Mother. The court also granted reunification services for appellant and ordered him to participate in sex abuse counseling for perpetrators. The court ordered appellant to have weekly four-hour monitored visits with D.D. The court also ordered appellant to have no contact with H.A., and monitored visits with Patience P. if she wanted them. Mother was also ordered to participate in family maintenance services including unannounced visits by the DCFS in the home.

Appellant timely filed a notice of appeal.

### DISCUSSION

Appellant argues that sufficient evidence did not support the juvenile dependency court's jurisdictional finding that his abuse of H.A. placed the minors at risk, and thus the court's jurisdiction findings and dispositional orders[8] must be reversed. Prior to

---

[8] Appellant does not assert any specific separate challenge to the dispositional order.

assessing the merits of appellant's contention, we first address the matter of appellant's standing to appeal the findings and orders pertaining to H.A. and Patience P.

### A.    Standing

Standing to appeal is jurisdictional, and the issue of whether a party has standing is a question of law. (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 837.) "Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. . . . An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. . . . These rules apply with full force to appeals from dependency proceedings." (*In re K.C.* (2011) 52 Cal.4th 231, 236.) To determine whether a party is aggrieved by a finding or order, we must identify the party's interest in it. (See *ibid.*)

As the record indicates, appellant has no legal parental relationship with either Patience P. or H.A. He does not have status as the presumed, alleged or biological father of the older minors. In fact the father of each girl appeared in the proceedings. (See *In re Alyssa F.* (2003) 112 Cal.App.4th 846, 855 [suggesting that only presumed fathers or biological fathers have standing to challenge certain orders]; *In re Karla C.* (2003) 113 Cal.App.4th 166, 172, 179–180 [implying alleged father lacked standing to participate in jurisdiction and disposition hearing].) Given the absence of any familial relationship between appellant and the two oldest minors, and given the nature of the dispositional orders in this case, appellant cannot claim he was aggrieved by the court's jurisdictional findings and orders with respect to Patience P. or H.A. Accordingly, he does not have standing to appeal the jurisdictional findings under section 300, subdivisions (b), (d), or (j) with respect to Patience P. and H.A.[9]

10

**B.	Jurisdictional findings as to D.D.**

For the purposes of the appeal, appellant does not contest the finding that he sexually abused H.A.  Instead, appellant argues that the juvenile dependency court erred in concluding that the minors were at current risk of harm because the children did not need the court's protection at the time of the adjudication hearing.  He points out that Mother acted appropriately, that the children were able to remain in her custody despite appellant's sexual abuse of H.A., and that he left the family home when the abuse was reported.  Appellant's claim is without merit.

We review the jurisdictional findings for "any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact."  (*In re David M.* (2005) 134 Cal.App.4th 822, 828 [jurisdictional findings]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762 [dispositional orders].)  "Under the substantial evidence rule, we have no power to pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or determine where the weight of the evidence lies."  (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748-749, fn. 6.)  "Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its decisions for those of the trier of fact."  (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.)  Applying this deferential standard, we review the evidentiary record in the light most favorable to the order.  (*In re Diamond H.*, *supra*, 82 Cal.App.4th at p. 1135.)

---

9	In any event, were we to reach the merits with respect to the findings and orders with respect to Patience P. and H.A., we would conclude in accord with our analysis concerning D.D., that sufficient evidence supported the court's jurisdictional findings.

Here the juvenile court assumed jurisdiction under section 300, subdivisions (b), (d)[10] and (j). Specifically, under section 300, subdivision (j), a child may be adjudged a dependent of the juvenile court if the "child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other [facts] the court considers probative in determining whether there is a substantial risk to the child." A jurisdictional finding under section 300, subdivision (j) requires both past abuse of a child's sibling and a current risk the child

---

[10] Section 300 reads, in pertinent part, as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of … the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness. . . . [¶¶] (d) The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." (§ 300, subds. (b) & (d).)

12

will be abused in the future. (*In re Carlos T.* (2009) 174 Cal.App.4th 795, 803*; In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565.)

Although "the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. (*In re Diamond H., supra,* 82 Cal.App.4th at p. 1135; *In re Troy D.* (1989) 215 Cal.App.3d 889, 899-900.) A parent's past conduct is a good predictor of future behavior. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169-1170.) "Facts supporting allegations that a child is one described by section 300 are cumulative." (*In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1050.) Thus, the court "must consider all the circumstances affecting the child, wherever they occur." (*Id.* at pp. 1048, 1049.)

In reviewing the sufficiency of the court's findings as to whether the abuse of H.A. placed D.D. at risk of physical harm, damage, danger, or sexual abuse, we examine the evidence in the record. Appellant's sexual abuse of H.A. was not a one-time occurrence. The circumstances of H.A.'s abuse showed there were multiple and ongoing instances of inappropriate sexual contact by appellant spanning a period of seven to eight months. The instances of sexual abuse were of increasing severity. The abuse ended only because H.A. confided in a friend. The nature and duration of this abuse permits a reasonable inference of substantial risk to D.D. (See *In re Karen R.* (2001) 95 Cal.App.4th 84, 90-91 [repeated acts of forcible incestuous rape of minor was so sexually aberrant as to place other siblings in home at substantial risk of sexual abuse]; *In re Dorothy I.* (1984) 162 Cal.App.3d 1154, 1157 [father's sexual abuse of sibling over prolonged period of time created present risk to minor]; cf. *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399 [allegations that father, more than one year earlier, inappropriately touched minor was not sufficient to "now establish a reason for state interference with the family"]; cf. *In re Savannah M.* (2005)131 Cal.App.4th 1387,1398 [one-time occurrence of neglect or abuse by caretaker or parent may not be sufficient to show substantial risk of future harm]; *In re J.N.* (2010) 181 Cal.App.4th 1010, 1022 [evidence of a single episode of parents'

drinking and driving was insufficient to bring minors within the juvenile court's jurisdiction].) Further, H.A. and D.D. are relatively close in age – H.A. was 10 when the abuse began and D.D. is now seven years old. Under these circumstances, it is not hard to imagine that at some point in the future D.D. might be subjected to the same type of acts committed against H.A.

In addition, appellant denied all responsibility for the abuse. Moreover, without court intervention, it does not appear that appellant would address the issues that gave rise to these proceedings. (See *In re Carlos T., supra,* 174 Cal.App.4th at pp. 800, 806 [affirming the exercise of jurisdiction based on substantial risk where although father was incarcerated he denied responsibility for having previously abused both children, the mother denied responsibility for allowing the abuse to occur, and "there [was] every reason to believe that [the] father would resume his sexual abuse of [the minors] without the state intervening to prevent him from obtaining access to them"].)

Furthermore although appellant moved out of the family home, there is no indication in the record before us that Mother and appellant have ended their relationship. Absent court jurisdiction appellant would have unlimited access to the home and unmonitored visits with D.D. "The more likely it is that the offending parent will have further contact with the nonoffending parent, the more the child's welfare is jeopardized by being placed unsupervised with the nonoffending parent." (*In re Vonda M.* (1987) 190 Cal. App.3d 753, 757.) "For the nonoffending parent to avoid the court supervision . . . he or she must go to the extraordinary length of pursuing all judicial protections available in the civil and criminal courts in order to establish his or her zeal, as well as ability, to protect the minor. Lesser measures have not been enough to reassure the Court of Appeal that the welfare of the minor can be protected without the aid of the court's juvenile dependency jurisdiction." (*Ibid.*) Here there was no evidence that Mother planned to seek any such judicial protections.

In view of the foregoing, we conclude that the court properly exercised jurisdiction under section 300, subdivision (j). Given our conclusion that substantial evidence supports jurisdiction under subdivision (j) of section 300, we need not address

appellant's further arguments that the evidence does not support a similar finding under subdivisions (b) and (d). When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. (*Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875-876.)

### *DISPOSITION*

The orders of the juvenile court are affirmed.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**

15